CHIEF JUSTICE SIMPSON
delivered the opinion of the court:
We deem it proper to remark, by way of explanation, in the commencement of our opinion in this case, that this is not a controversy between Batman and Thomas as to which one of them is entitled to the office of jailer of Jefferson county. Thomas is not a party to these proceedings. They were insti *538 tuted by Batman, in the first place, to compel tbe presiding judge of tbe county court, the clerk thereof, and the sheriff of the county, to proceed to the discharge of their duties as an examining board, and in that character to determine who was elected to the office of jailer at the August election in 1858. In the second place, to compel the presiding judge of the county court, and the clerk thereof, and a justice of the peace, to organize as required by law, and proceed to the discharge of their duties as a contesting board.
It will be readily perceived, that in determining the questions arising under these proceedings, although Batman’s right to the office may be incidentally involved, yet it is not presented to this court for its adjudication. The application to the circuit court was not made by Batman for a decision that he was entitled to the office of jailer, nor could the court have rendered any decision on that question that would have determined which of the claimants had the best right to the office, and have thus settled the contest between them. This appeal only brings before this court for investigation the same matters which were passed upon by the circuit court.
The law has designated the manner in which such questions shall be ascertained and determined. A board is to be constituted as prescribed by the statute, to examine the poll books, and issue certificates of election. Another board is to be organized, in the case of a contested election, for determining the contest between the claimants. Upon this last mentioned board the law devolves the duty and confers the power of deciding who is entitled to the office. The courts have no right to adjudicate upon these questions, or to decide such contests. They may by mandamus compel either of the boards to act, when it refuses to do so without any good cause. This was the object of the proceedings in these consolidated cases, and to this extent only has the judiciary any power to afford relief in cases of contested elections.
The decision of the contesting board is made final and conclusive by the statute. By this provision, the legislature evidently intended to accomplish a two-fold purpose. A speedy and summary mode of deciding cases of contested election *539 and determining finally and conclusively which one of the claimants was entitled to the office, was very important, and to effect this object, the organization of this board was provided for. Another object equally important was to withdraw these contests from the jurisdiction of the courts; and as was said in the case of Newcum vs. Kirtley, (13 B. Mon., 517,) “ to prevent the ordinary tribunals of justice from being harassed, and indeed overwhelmed with the investigations, and involved in the excitements to which these cases may be expected to give rise.” This object was also effected by making the decision of this board final and conclusive in all cases of contested elections. From the decisions of this board there is no appeal. Its decisions are final on all questions of both law and fact, which may be involved in the investigation of the lights of the claimants to the office in contest.
Upon the assumption that Batman was duly elected to the office of jailer — and we think we are authorized by the facts which appear in the record to act upon this assumption — we will proceed to the examination of the .various questions that ai’ise in these cases.
The reasons given by the clerk of the county court, and by the sheriff, for their failure and refusal to act in comparing the polls, will be first considered.
They state that a board for examining the poll books, composed of two justices of the peace, was duly and legally constituted, all other persons in any manner designated by law as constituent members of said board being unable or failing to act; and that the board, as thus organized, proceeded, on the day fixed by law, to discharge the duties of an examining board.
They state further, that they and the presiding judge of the county court and coroner were, at that election, all candidates for re-election to the same office which each of them had previously held; and for that reason they insist they were not qualified to act as members of the board. The clerk of the county court also states, that on the day designated by law for comparing the polls, he was too unwell to have attended to and discharged the duties incumbent on the board.
*540 The persons upon whom the law devolves the duty of comparing the polls cannot excuse themselves, for a failure to discharge that duty, on the ground that it has been discharged by other persons. If the board that may organize be composed of individuals who, under the provisions of the statute, are not constituent members thereof, their action may be disregarded by those who, having been candidates for office, are interested in the result of the election. Having a right to a comparison of the polls by the proper persons, they may proceed by writ of mandamus to compel them to perform their duty, unless they are exonerated from its performance by their inability or disqualification to act. The second reason relied upon, therefore, is the only one necessary to be considered.
The facts upon, which the validity of this reason depends are not controverted. The legal effect of these facts is the matter in dispute, and which we are called upon to decide. Is the sheriff, when he is himself a candidate for office at an election, thereby disqualified from acting as a member of the board? Are the other persons designated by the-statute as members of the board also disqualified to act as such when they are candidates for office at the same election ? These are the questions by which the sufficiency of the reason relied upon is to be tested and determined.
The section of the statute which provides for the organization of the board to compare the polls is as follows, viz:
“ The presiding judge of the county court, the clerk thereof, and the sheriff, or other officer acting for him at an election, shall constitute aboard for examining the poll books of each county, and giving certificates of election. Any two of them may constitute a board; but if either is a candidate, he shall have no voice in the decision of his own case. If, from any cause, two of the before named persons cannot, in whole or in part, act in comparing the polls, their places shall be supplied by the two justices of the peace who may reside nearest to the courthouse.”
It is further enacted by the statute, “that if the office of sheriff is vacant, or if the sheriff is himself a candidate at any election, all his duties pertaining to that election shall be performed *541 by the coronor, and such deputies as he may appoint for that purpose.”
The duties of a sheriff pertaining to an election include all those that the statute imposes upon him, both during an election and subsequent thereto. The languag-e used is sufficiently comprehensive to embrace them all. And if any doubt existed with respect to the intention of the legislature on this subject, it is entirely removed by the provision relating to the organization of the board. It is to be composed of the presiding judge of the county court, the clerk thereof, and the sheriff, or other officer acting for him at an election. The sheriff is not to be a member of the board, when, according to the requisitions of the statute, some other officer has to act for him at an election. The officer thus acting becomes, in consequence thereof, one of the constituent members of the board. The expression, “ the sheriff, or other officer acting for him at an election,” does not mean that either one of them may be a member of the board j but that the sheriff shall be, unless some other officer has acted for him at the election; then, in that case, the officer thus acting shall be the member, and not the sheriff.
It follows, that the sheriff was not qualified to act in this case, as a member of the examing board. The coroner did not act for him at the election, because he was himself a candidate. And as the presiding judge of the county court was also a candidate, he did not appoint any person to perform the duties of the sheriff, and therefore there was no person to take the place of the sheriff in the board. The judges of the election at each of the precincts had to appoint a person to act in the place of the sheriff for the election in that precinct. But it is evident that the statute does not contemplate that such persons shall be members of the examining board. The officer who acts for the sheriff is to be the member. One person alone is referred to, and not several persons who may thus act. Besides, the power which the statute confers on the persons who may be appointed by the judges of the election at each precinct, is expressly restricted to that precinct and to that day.
As therefore the sheriff was disqualified to act as a member *542 of the board, and there was no person to act in his place, and the clerk of the county court was too unwell to act on the day appointed by law, a case had occurred where, according to the provisions of the statute, their places were to be supplied by the two justices of the peace who resided nearest the courthouse.
But we think the clerk of the county court, had he been well, was disqualified to act under the circumstances, inasmuch as he was also a candidate at the same election.
We regard it as perfectly manifest, from the provisions of the statute, the legislature intended that only one examing board should be organized. If the sheriff is not himself a candidate at the election, the other two persons named may act as members of the board in conjunction with him, although one of them is a candidate. He is not, however, allowed a voice in the decision of his own case, but it is to be decided by the other two members, who are supposed to be disinterested.
Where, however, two of them are candidates, inasmuch as they cannot act in part in the performance of the duties which have to be discharged by the examining board, their places must be supplied in the manner pointed out by the statute. If one only be thus disqualified, they can still constitute a board, because, although he is not entitled to a vote in his own case, and therefore in part cannot act as a member of the board, yet the other two being a majority, are able not only to dispose of his case, but to control and regulate all the decisions of the board.
But where two of them are unable to act in part, because, being candidates, they could not vote for themselves, although each one could vote in the case of the other, yet as they would constitute a majority of the board, and be able to control its action, and might do so to the promotion of their own success, and to the prejudice of other candidates, they are not allowed a place in the board.
The policy of this provision is obvious. It is intended to guard against improper combinations, and to secure just and impartial decisions by the board. When two of the regular members are candidates, they may be on the same ticket, and *543 the success of one may secure the success of the other. They may thus have a common interest to subserve, or they might, if they were in the board, be secretly influenced to favor each other. The law, therefore, in its wisdom, excludes them both, and other persons are required to fill their places in the board.
We do not think the language of the statute is susceptible of the construction insisted upon by the counsel for the appellant. It is certainly true, where the members of the board are only in part disqualified to act, that they could act in part. But the expression is, if, from any cause, two of them cannot act in whole or in part, then their places are to be supplied by other persons. It is contended that the meaning of this expression is, if they cannot act in any part, then their places are to be supplied; but if they can act in any part, they arte required to act. Its obvious meaning, however, is, that if, in any part of the business which will come before the board, they cannot, or, in other words, are disqualified to act, their places are to be supplied by the persons designated by the statute. This construction of the statute is that which is required, not only by the language used, but by the policy of the law, and the manifest intention of the legislature.
We are therefore of opinion that the sheriff and the judge of the county court, and the clerk thereof, were all disqualified to act as members of the board to compare the polls, and that the motion against them, to show cause why they should not be compelled to act, was properly overruled.
Whether the board which did act was or not properly organized, is a question that does not arise in this case. We would, however, remark, that in a case like this, a substantial compliance with the requisitions of the statute is all that is necessary.
The motion in the other case is made against the members of the contesting board. They say in their answer that the notice of the application by the appellant, to contest the election, was not given to the officer who obtained the certificate, within the time prescribed by the statute, and for that reason they refused to consider and determine which one of the parties had the right to the office.
*544 The statute requires that the notice of the intended application shall be given within ten days after the final action of the board of examiners.
The board of examiners delivered to Thomas a certificate that he was elected on the 5th of the month; but the two copies of the certificate which the statute requires them to make and leave in the clerk’s office of the county court, were not filled up and subscribed until the day following. The certificate to Thomas may have invested him with the right to the office, but the final action of the board on the subject did not take place until the next day.
As, then, the final action of the board occurred on the 6th of the month, and the notice was executed on the 16th, the question is, was the notice given within the time allowed by the statute? The result of this inquiry depends upon the mode in which the time is to be computed, under the statute.
In the case of Woods vs. Patrick, which was decided in 1808, (Hardin's Rep., 457,) it appeared that the order for the change of venue had been deposited in the clerk’s office on the 8th day of February, and that the term of the court commenced on the 10th day of the next month, and it was held by the court that the order had been deposited thirty days before the commencement of the term, that being the time required by law, considering the day of depositing the order as inclusive, and the first day of the court as exclusive.
In the case of Pollard vs. Yoder, (2 A. K. Marshall, 264,) it was decided, that process which was executed on the 5th of the month, the first day of the next term to which it was returnable being the 15th of the same month, was served ten days before the return day thereof. The court referred to the previous case of Woods vs. Patrick, and said they would decide the case before them by the well known common law rule of computing time; by which rule one day ought to be included and the other excluded.
Again, in the case of Ogden vs. Redman, (3 A. K. Marshall,) in which the question was, whether, where an execution had been issued on the 29th of July, and was made returnable on the 28th of August next ensuing, there was a space of thirty *545 days between the teste and return; the court decided that there was, and that the expressions of the statute, being “thirty days at least between the teste and return,” and not between the day of the teste and the day of return, did not warrant a departure from the general rule of counting time named in a statute, viz: of excluding one day and including the other.
And in the subsequent case of Sanders’ heirs vs. Norton, (4 Mon., 464,) where the sheriff gave notice on the 9th, and made the sale on the 19th day of the same month, it was decided that there was a period of ten days between the notice and the sale, counting one of the days inclusive and the other exclusive, which the court said was the well known rule in computing any number of days.
A petition for a rehearing was filed in the case, in which it was contended that the case before the court was an exception to the general rule, because it was provided by the statute which regulated the subject, that the sale should not be made in less than ten days from the court day on which the notice was given, thereby excluding the day on which the notice was given from the computation.
The court, however, adhered to its opinion, stating that although the statute expressly excluded the day of the advertisement, it did not follow that the day of sale was also to be excluded. The settled rule of the court in computing time under our statutes was to include one day and exclude the other, and the circumstance that the statute pointed out which day was to be excluded, did not change the rule or prevent its application. The court also remarked that the rule was then too well settled to be overturned.
That case furnishes a clear illustration of the meaning of the rule, as well as of the manner of its application. If the first day be excluded, as it was in that case, the last day must be counted as one of the intermediate days; that is, it must be counted as one of the days which had elapsed before the act was done. Both days are not to be counted as part of the intervening period; one only is to be counted. In that case the notice was given on the 9th of the month. The sale was made, on the 19th. The law required ten days notice before the sale.. *546 The court decided that ten days previous notice had been given. Of course the ten days had expired before the sale, although it was made on the nineteenth. According to the rule as thus applied — and the application was in strict comformity with all the previous cases — a notice which is required to be served •within ten days from an act which is done on the 9th, would not be in time if served on the 19th, because the ten days within which it must be served would have previously expired.
In the case of Smith vs. Cassity, (9 B. Mon., 192,) this rule was recognized as the correct one, but it was inadvertently misapplied. Neither the day on which the writ of error issued, nor the day on which the decree was rendered, was included in the computation of the time which had elapsed before the writ of error was sued out.
No new rule was therefore asserted in the case of Chiles vs. Smith's heirs, (13 B. Mon., 460,) The then existing rule, as it had been previously understood and applied, was merely stated and exemplified, and the authorities referred to on which it was founded. The manner of ascertaining and determining when the day on which the act was done or the event occurred was to be computed as part of the time, was also rendered definite and certain.
The legislature has adopted substantially the same rule. It is enacted in the Revised Statutes {page 189) that “when a statute requires a notice to be given, or any act to be done a. certain time before any motion or proceeding, there must be that time exclusive of the day for such motion or proceeding. But the day on which such notice is given, or such act is done, may be counted as one day and part of the time.”
The rule here prescribed for the computation of time is, that one day must be excluded, but the other may be counted; that is, both days are not to be counted as part of the time that has intervened between two acts. It is the same rule substantially, which had been previously settled by this court, which was, that only one of the days was to be included in the computation ; with this difference, however, that the last day is not to be counted, but there must be the requisite number of days, exclusive of that day. And it must be remembered, that by *547 the rule as it has been applied by this court, the last day, when included in the computation, has been counted as one of the days which had elapsed before the thing occurred that was done on that day.
The decisions on this point in the other states have been vacillating and contradictory. In some of them the same rule Avhich has been adopted by this court has been applied. (Presbrey vs. Williams, 15 Mass. Rep., 193.) In some it has been held, that the day on which the act is done ought to be included or excluded, as the nature of the case indicated to the court the propriety of a rigorous or liberal construction. (Sims vs. Hampton, 1 Serg. & Rawle Penn. R., 411; O’Connor vs. Towns, 1 Texas, 107.) In the case of Arnold vs. United States, (9 Cranch, 120,) the supreme court decided the general rule to be “ that where the computation is to be made from an act done, the day on which the act is done is to be included. The same rule was recognized in the case of Pearpoint, &c., vs. Graham, (4 Wash. Cir. Co. R., 232,) as being the true and correct one in the computation of time.
The same rule was adopted and acted on in a large majority of the earlier cases in the English courts. It has to some extent been departed from in the more modem cases in that country. (Lester vs. Garland, 15 Ves. C. R., 248; Hardy vs. Ryle, 9 B. & Cress., 603.) These cases, however, did not arise on the construction of statutes, but upon contracts and private instruments, to which the rule has not been extended by this court.
By the law merchant, when a bill is payable at so many days after date or after sight, the day of the date or of the acceptance must be excluded. And in the case of other contracts, the intention of the parties should govern their construction. But this does not prove that the rule which has been adopted in this state for the computation of time, in cases arising under public statutes, is wrong, or that it should be now changed, after it has been acted on uniformly and unwaveringly for more than half a century, and been sanctioned by legislative enactment. It has been well remarked, “that the certainty of a *548 rule is of more importance than the reason upon which it is founded.”
There does not seem to be any peculiar reason why this case should- be exempted from the operation of the general rule. The .final action of the board was the terminus a quo the computation was to be made. A notice that the election would be contested could have been given on the same day the final action took place. As the appellant was interested in the result of that action, it may reasonably be presumed that he was immediately apprised of it, as he had a right to believe that he would receive a certificate of his election from the board, tie cannot be regarded as occupying the attitude of a stranger to the action of the board. He was in reality a party in interest in the matters which were before them for their examination and decision. Having a right to give a notice on the 6th of the month, if he could also give it on the 16th it would be allowing him a period of eleven days within which to give it, although the statute declares expressly that no application to contest an election shall be heard, unless the notice be given within ten days after the final action of the board. The notice was given on the eleventh day after such action, and was not therefore within the time allowed by the statute.
The time allowed by the statute, even including the day upon which the notice was given in the computation, is fully sufficient for the giving of such a notice as the law requires. There is no greater hardship, therefore, in applying the rule in this case, than there is in many other cases where parties are barred by the lapse of time from the assertion of their rights.
But it is argued, that the same rule of computing time should be applied to every provision of the statute regulating elections; and as it will not do to apply this rule to that part of the statute which directs the sheriff to deposit with the clerk of the county court the poll books of the different precincts within two days next after an election, it should not be applied to that part of it which prescribes the time within which the notice of an application to contest the election shall be given.
*549 The rule under consideration, although general, is not universal, nor inflexible in its application. It applies in every case arising under a statute where its operation will not be inconsistent with'the manifest intention of the legislature. If, however, its operation be inconsistent with that intention, or tend to defeat it, then, in such a case, it should not be applied.
The provision regulating the time within which the notice is to be given does hot contain any indication of an intention on the part of the legislature, that the rule which it prescribed ' at the same session for computing time, when a statute requires a notice to be given, should not apply. Indeed, the language used in declaring in what time the notice shall be given, viz: within ten days after the final action of the board, seems to indicate an intention to make it apply. But whether it does or not, it certainly does not indicate a contrary intention.
That part of the statute, however, which directs the sheriff to deposit the poll books, within two days next after an election, evidently excludes the day of the election, and the two next or following days are the days referred to. As the election occupies, or is supposed to occupy, the whole of the day on which it takes place, the expression within the two days next after the election, clearly means the two days next after the day of the election. And as both of these days are included in the time allowed for depositing the poll books, the last one of the two, as well as the day of the election, must be excluded, in computing the intervening time, so as to leave two whole days. This, therefore, may be regarded as one of the exceptions to the general rule, growing out of the peculiar language used, and the manifest intention of the legislature.
As, therefore, the notice was not given within the time allowed by the statute, the contesting board acted properly in refusing to hear the application to contest the election.
The appellant has lost the office by the error committed by the examining board, and his own failure to proceed within the time prescribed by law for the correction of that error.
Wherefore, the judgment of the circuit court is affirmed.