# SUPREME JUD·ICIAL COURT

FOR THE

## COUNTY OF BRISTOL, OCTOBER TERM 1871, AT TAUNTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JAMES D. COLT,
Hon. SETH AMES,        } Justices.
Hon. MARCUS MORTON,

---

## LEONARD B. BRONSON vs. WINIFRED B. COFFIN & others.

The owner of a farm conveyed a strip of it between four and five rods wide to a railroad corporation by a deed containing this clause: "I hereby covenant that I and my heirs and assigns will make and maintain a sufficient fence through the whole length of that part of the railroad which runs through my farm; this covenant of maintaining the fence to be perpetual and obligatory upon me and all persons who shall become owners of the land on each side of said railroad." *Held*, (1.) that this covenant gave the grantee an interest in the nature of an easement in ·the adjoining land of the grantor, and ran with that land, and constituted an incumbrance, within the meaning of the covenant against incumbrances in a subsequent deed thereof; (2.) that the obligation to maintain the fence was not impaired by the omission to perform it for twenty years, without any evidence of its having been released or extinguished; (3.) that an action for a breach of the covenant against incumbrances in the second deed was not barred by the statute of limitations until twenty years after the date of that deed; (4.) that the fence was to be maintained on each side of the railroad, and wholly on the land retained by the grantor in the first deed; (5.) that the measure of damages for a breach of the covenant against incumbrances was a just compensation for the real injury resulting from the incumbrance, to be estimated by the difference in the fair market value of the estate by reason of the existence of the incumbrance, and taking into consideration the cost of fencing so far only as it exceeded the cost of any fences which the situation and circumstances of the estate would otherwise have required the maintenance of.

CONTRACT upon the covenant against incumbrances, contained in a deed from the defendants to the plaintiff, dated May 24, 1866. Writ dated September 28, 1868. Trial in the superior court, before *Putnam*, J., who made the following report thereof :

" The land in question was situated in New Bedford, and came to the defendants under the will of the late Timothy G. Coffin, and was a portion of his farm.

" On April 6, 1839, the said Coffin conveyed a strip of land fifty-five rods in length and four and three tenths rods wide, running through the land in question, to the New Bedford & Taunton Railroad Company, by a deed which contained the following clause : ' I, the said T. G. Coffin, hereby covenant that I and my heirs and assigns will make and maintain a sufficient fence through the whole length of that part of the railroad which runs through my farm ; this covenant of maintaining the fence to be perpetual and obligatory upon me and all persons who shall become owners of the land on each side of said railroad.'

" The defendants contended that this clause did not constitute an incumbrance on the land, but created merely a personal obligation. But the judge, for the purposes of the trial, ruled that it did constitute an incumbrance upon the whole of the land now owned by the plaintiff, and which he held under said deed. To this ruling the defendants excepted.

" The case then proceeded to the jury, upon the amount of the plaintiff's damages.

" Upon the point of what would constitute a ' sufficient fence ' within the clause named, the defendants requested the judge to rule that that would be a sufficient fence which the statute had denominated as a sufficient fence between adjoining proprietors under the Gen. Sts. *c.* 25, § 1. The judge declined to rule as requested ; but did rule that a ' sufficient fence,' within the meaning of the clause, need not necessarily be any better than such fences as adjoining proprietors of improved land are required to make and maintain under the statute, but that it must be a fence reasonably sufficient to keep animals from straying from the plaintiff's land on to the line of the railroad. To this ruling the defendants excepted.

" The defendants further asked the judge to rule that upon a proper construction of the deed it did not appear that the obligation, if any, meant an obligation to make and maintain a division fence on each side of the line of the land conveyed to the railroad. The judge ruled otherwise, and the defendants excepted.

" Evidence was offered on both sides as to the cost of building and maintaining fences of wood and stone, reasonably sufficient for the purposes named in the last ruling; and also evidence of experts as to how far the existence of what was thus claimed by the plaintiff to be an incumbrance would affect the market value of the land ; the experts including in their estimates the cost of building and maintaining the fence.

" It appeared that when the plaintiff bought he knew nothing of the existence of this incumbrance, but that he had since built a wall along a portion of the line between his land and that of the railroad ; and the superintendent of the railroad company testified that they should not release the plaintiff from the obligation in the deed ; but there was no evidence as to whether said company had or had not ever made any request concerning a fence, or whether any refusal had been made to build one, nor in any way concerning the relations between the railroad and said plaintiff and his grantors, including said Timothy G. Coffin, or any acts or conduct of theirs adverse to the rights of the railroad., nor concerning the use or improvement or mode of occupation of the premises prior to the plaintiff's purchase, nor whether there had been a need of any fence prior to the plaintiff's purchase, nor whether the fence had been often or never renewed but the plaintiff testified that at the date of his purchase in 1866 there was an old fence near the line of the railroad, but not on it, and running but a short distance ; and there was evidence that at the date of the plaintiff's purchase certain fences existed on the plaintiff's land to the west of the railroad.

" The defendants requested the judge to rule as follows :

" That if, during the whole period from the time of giving the deed to the corporation in 1839 to the date of the plaintiff's deed in 1866, the plaintiff's grantors and those who had preceded

them as owners of the plaintiff's land, and no other persons, have in any part performed what was stipulated in the deed to the corporation, and had not been required or requested to perform it by the corporation, then, a period of more than twenty years having elapsed, the right of the railroad to require performance is barred by the statute of limitations, and the incumbrance, if any, had ceased; that under such a state of facts the corporation could not enforce the contract expressed in the deed, whether regarded as a personal undertaking of the grantor or as an incumbrance on the land.

" That the plaintiff must show either that he had been compelled to pay damages, or that he is now legally bound under the deed to the corporation to maintain the fence or pay damages; and that upon this question the statute of limitations applied.

" That the proper measure of damages is what the railroad corporation could recover in an action for a failure to perform the stipulation contained in the deed, regarded as an incumbrance.

" That as, at the time of the conveyance by the said Timothy G. Coffin to the railroad company, such corporations were not bound by law to fence their roads, the only obligation created by the clause would be, at the most, the cost of building and maintaining one half of the division fence.

" The judge declined to give the rulings as requested; but did instruct the jury, for the purposes of the trial, that the plaintiff was bound by this clause in the deed to build and maintain perpetually a ' sufficient ' fence (having duly instructed them as to what was meant by a ' sufficient ' fence) on both sides of the railroad, and for its whole length; that this constituted an incumbrance on the whole of the plaintiff's land which he now owned on both sides of the railroad (the same being in fact the land purchased of said defendants by the said deed); that the rule of damages for the breach of the covenant against this incumbrance was a just compensation for the real injury resulting from such incumbrance; that, in determining this question, they were not alone to consider the cost to the plaintiffs of building and maintaining such fence, but were also to inquire how far the existence

of this incumbrance impaired the value of the estate to the owner, and what would be the difference in its fair market value, by reason of the existence of this incumbrance — including in the depreciation, if any, the cost of building and maintaining the fence, and not treating that as an additional item — and upon the whole evidence allow him a just compensation for the real injury thus sustained. To these rulings and refusals to rule the defendants excepted."

The jury returned a verdict for the plaintiff in the sum of $1140, which by the terms of the report was to stand, or be set aside and a new trial had upon such rulings as this court should determine to be proper. The case was argued at October term 1870, before all the judges but *Colt*, J.

*J. Brown*, for the defendants.

*T. M. Stetson*, for the plaintiff.

GRAY, J. The deed made by Timothy G. Coffin to the New Bedford and Taunton Railroad Company in 1839 conveyed a strip of land between four and five rods wide, and bounded on each side by the lands retained by Coffin and afterwards granted by his devisees to the plaintiff; and contained this clause: " I, the said T. G. Coffin, hereby covenant that I and my heirs and assigns will make and maintain a sufficient fence through the whole length of that part of the railroad which runs through my farm ; this covenant of maintaining the fence to be perpetual and obligatory upon me and all persons who shall become owners of the land on each side of the railroad."

The principal question in the case is, whether the obligation thus expressed, to maintain a division fence between the land granted and the adjoining lands of the grantor, created a charge upon those lands, binding upon any assignee thereof, either by way of covenant running with the lands, or grant of an interest in the nature of an easement therein, which constituted an incumbrance, within the meaning of the covenant against incumbrances in a subsequent deed thereof from the grantor or those claiming title under him.

" On general principles," said Chief Justice Parsons, " every right to or interest in the land granted, to the diminution of the

value of the land, but consistent with the passing of the fee in it by the conveyance, must be deemed in law an incumbrance." *Prescott* v. *Trueman*, 4 Mass. 627, 629.

Words sounding in covenant only may operate by way of grant of an easement, wherever it is necessary to give them that effect in order to carry out the manifest intention of the parties. Bro. Ab. Covenant, 2. *Holms* v. *Seller*, 3 Lev. 305. *Rowbotham* v. *Wilson*, 8 H. L. Cas. 348. *Greene* v. *Creighton*, 7 R. I. 1. *Norfleet* v. *Cromwell*, 64 No. Car. 1.

In order to make a covenant run with the land of the covenantor and bind his heirs and assigns, the covenantee must, according to all the authorities, have such an interest in that land as to amount to a privity of estate between the parties to the covenant. In this Commonwealth, at least, it is not necessary that their relation should be that of landlord and tenant; but an interest in the nature of an easement in the land which the covenant purports to bind, whether already existing, or created by the very deed which contains the covenant, constitutes a sufficient privity of estate to make the burden of a covenant to do certain acts upon that land, for the support and protection of that interest and the beneficial use and enjoyment of the land granted, run with the land charged. And an obligation, duly expressed, that the structures upon one parcel of land shall forever be of a certain character for the benefit of an adjoining parcel is equally a charge upon the first parcel, whether the obligation is affirmative or merely restrictive, and whether the affirmative acts necessary to carry the obligation into effect are to be done by the owner of the one or the owner of the other.

In *Hurd* v. *Curtis*, 19 Pick. 459, several owners of mills drawing water from the same stream by means of one dam, for themselves, their heirs, administrators and assigns, mutually covenanted with each other, that each of the mills should have wheels of a certain construction and limited power; and a party to the indenture brought an action on this covenant against a subsequent purchaser of some of the mills who was not himself a party to the indenture. Mr. Justice Wilde very clearly stated the rule, as follows: " As there is no privity of contract between the

plaintiff and the defendants, it follows that the defendants are not liable in this action, unless there is a privity of estate between them. Where such a privity exists between the covenantor and the covenantee, and the covenantor assigns his estate, the privity thereby created between the assignee and the other contracting parties renders the former liable on all such covenants as regulate the mode of occupying the estate, and the like covenants concerning the same. And so if the covenantee assigns his estate, his assignee will have the benefit of similar covenants. These covenants are annexed to the land and run with it. But if there is no privity of estate between the contracting parties, the assignee will not be bound by, nor have the benefit of, any covenants between the contracting parties, although they may relate to the land he takes by assignment or purchase from one of the parties to the contract. In such a case, the covenants are personal and are collateral to the land." And it was held that the action could not be maintained, solely because there was no privity of estate between the covenanting parties, but their estates were several, and there was, upon the true construction of the peculiar terms of that indenture, no grant of any interest in the real estate of either party, to which the covenants could be annexed.

So in *Plymouth* v. *Carver*, 16 Pick. 183, land was conveyed upon condition that the grantees should become bound by sufficient bond to make and maintain a portion of the highway passing by the land ; and the grantees gave bond accordingly, for themselves, their heirs, executors, administrators and assigns. This bond was held not to be a covenant running with the land, because the only condition in the deed was, that the grantees should give bond to maintain the highway, and upon their giving such a bond the estate vested in them absolutely, and the grantor had no longer any interest in the land, and no right or estate therein was conveyed by them to him, so that there was no privity of estate between the parties to the covenant, and no land with which the covenant could run ; and the bond was but a personal obligation of the obligors, not subjecting the land which had been conveyed to them in any other way than any of their estate might be liable to the performance of their personal covenants or obligations.

In *Wheelock* v. *Thayer*, 16 Pick. 68, the action was against the original covenantor, and the question was whether, in a grant of a privilege of drawing water from a pond, a covenant respecting the same would support an action by an assignee of the grantee ; and it was held that it would not, for the reason that it was a mere covenant in gross, and not for the benefit of any land of the covenantee, and therefore not assignable.

In *Morse* v. *Aldrich*, 19 Pick. 449, and 1 Met. 544, the owner of a tract of land and a mill-pond conveyed a portion of both by metes and bounds, with liberty to enter upon the rest to dig and carry away the whole or any part of the soil. After the grantee had conveyed the same premises to the plaintiff, the original grantor, by indenture with the plaintiff, covenanted to draw off his pond six days in August and September in each year, upon the plaintiff's request, for the purpose of giving the plaintiff an opportunity of digging and carrying out mud from the pond. The covenantor died and his estate descended to his heirs, of whom one conveyed his share to the others. It was held that, this covenant being made for the purpose of securing to the plaintiff the full benefit of the land granted to him, and there being a privity of estate in the rest of the land between the parties to the covenant at the time it was made, it ran with the land ; and that the heirs and assigns of the covenantor, though not named, were liable to an action thereon for neglecting to draw off the pond after being requested so to do.

But perhaps the strongest case in this court in favor of the position that the clause in question in Coffin's deed was strictly a covenant running with the adjoining lands is *Savage* v. *Mason*, 3 Cush. 500. In that case, an indenture of partition between the owners in common of a large tract of land contained mutual covenants, which it was expressly declared should be binding upon and be available to heirs and assignees, and should be deemed perpetual and fundamental, and to run with the land thereby divided. One of these covenants was, that the centre of party walls of every brick or stone building might be placed upon the lines dividing the lots from contiguous lots, and that the owner of such contiguous lots, whenever he should make use of the same

in any building, should pay for one half of the wall by him so used. A lot set off to one of the parties to the indenture was conveyed by his heirs to persons who afterwards conveyed it to another person, who entered and took possession and built a brick dwelling-house thereon, and placed the centre of the party wall of one side thereof upon the line dividing this lot from the contiguous lot, and then conveyed the lot with the dwelling-house thereon to persons who again conveyed to the plaintiffs. The contiguous lot was set off by the partition to another of the parties to the indenture, and upon his death, and a division of his estate, to the defendant as one of his heirs, and while he owned it and after all the conveyances above mentioned, a brick dwelling-house was erected thereon, in which the party wall built by the owner of the plaintiffs' lot was used ; and the plaintiffs after demand sued him upon the covenant for half of the value of the wall. Upon these facts, it will be observed that by the indenture the entire fee in the defendant's lot had vested in his ancestor, leaving no reversion in the other parties to the indenture, under whom the plaintiffs claimed ; that the plaintiffs did not themselves build the party wall in question; that the defendant did not acquire his title until after the walls had been built, and did not use the wall until after the plaintiffs had acquired their title ; that the only privity of estate between the parties consisted in the mutual right and obligation created by the same instrument which contained the covenant sued on, to have the division wall stand half on each lot, and to contribute to the expense thereof ; and that the obligation sought to be enforced against the defendant was an affirmative covenant to pay money. The court gave judgment for the plaintiffs, saying : " The liability to perform, and the right to take advantage of this covenant, both pass to the heir or assignee of the land to which the covenant is attached. This covenant can by no means be considered as merely personal, collateral and detached from the land. There was a privity of estate between the covenanting parties in the land to which the covenant was annexed. The covenant is in terms between the parties and their respective heirs and assigns ; it has direct and immediate reference to the land ; it relates to the mode of occu-

pying and enjoying the land; it is beneficial to the owner as owner, and to no other person; it is in truth inherent in and attached to the land, and necessarily goes with the land into the hands of the heir or assignee." The decision was thus put upon the ground of a privity of estate between the owners of the two lots, created by the indenture itself, and sufficient to support the covenant to pay for half of the wall as strictly a covenant running with the land; and not upon the theory (since applied in *Maine* v. *Cumston*, 98 Mass. 317, to the case of a similar agreement not under seal) that the person erecting the wall, and his assigns, had by virtue of the indenture a property in the whole wall until it was used by the owner of the adjoining lot in building thereon, and the right then to recover from him a proportion of the cost of the wall. The covenant to maintain a fence in the case at bar falls within the reason of the decision in *Savage* v. *Mason.*

The same doctrine was long ago recognized in *Holmes* v. *Buckley*, reported in Pre. Ch. 39, and 1 Eq. Cas. Ab. 27, and cited as undoubted law upon this point by Lord St. Leonards in Sugd. Vend. (14th ed.) 593, in which a covenant, in a grant of a watercourse, to clear it and keep it in repair, was held to be a covenant running with land of the grantor through which the watercourse passed. See also *Van Rensselaer* v. *Read,* 26 N. Y. 558, 574–577; *Woodruff* v. *Trenton Water Power Co.* 2 Stockt. 489; *Carr* v. *Lowry,* 27 Penn. State, 257.

In the general definitions of easements in the text books, it is indeed sometimes said that they consist either in suffering something to be done, or in abstaining from doing something, upon the servient tenement. 3 Kent Com. (6th ed.) 419. Washburn on Easements (2d ed.) 4, 5. Gale on Easements (4th ed.) 5. But the obligation to maintain a fence by prescription or agreement is classed by the same writers with easements, though Mr. Gale calls it a "spurious easement," and one of his editors "a right in the nature of an easement." 3 Kent Com. 438. Washburn on Easements, 524. Gale on Easements, 117, 460, 487, 488. 524 note. See also Hunt on Boundaries and Fences (2d ed.) 49 51, 99.

In England, it has been well settled from very early times, and never denied, that an obligation of the owner of land to fence against land adjoining may be established by prescription, and if so established is a charge upon his land. Had this not been so, the point, formerly much mooted, whether such a charge was extinguished by unity of possession and title of the two closes, could not have arisen. Fitz. N. B. 128 note. *Anon.* Dyer, 295 *b. Sury* v. *Pigot,* Pop. 166, 170, 172 ; *S. C.* Noy, 84 ; Latch, 153, 154. *Polus* v. *Henstock,* 1 Ventr. 97 ; *S. C.* 2 Keb. 686, 707 ; T. Raym. 192. *Star* v. *Rookesby,* 1 Salk. 335. Vin. Ab. Fences, pl. 164, 166. *Boyle* v. *Tamlyn,* 9 D. & R. 430 ; *S. C.* 6 B. & C. 329. *Barber* v. *Whiteley,* 34 L. J. N. S. (Q. B.) 212. In *Boyle* v. *Tamlyn,* Mr. Justice Bayley said : " Such a right to have fences repaired by the owner of adjoining lands is in the nature of a grant of a distinct easement, affecting the land of the grantor." 9 D. & R. 437, and 6 B. & C. 338, 339. And Justices Littledale and Holroyd appear to have concurred in his view. 9 D. & R. 439, 440.

In Massachusetts, the doctrine has always been recognized, that the owner or occupier of land may be bound by prescription to a more extensive obligation to keep up and repair the division fences than would be imposed upon him by the common law or by the statutes of the Commonwealth. *Rust* v. *Low,* 6 Mass. 90, 94, 97. 2 Dane Ab. 659, 660. *Minor* v. *Deland,* 18 Pick. 266, 267. *Thayer* v. *Arnold,* 4 Met. 589, 590. In *Binney* v. *Hull,* 5 Pick. 503, 506, it was adjudged that the owner of one of two adjoining lots of land might be bound by prescription to maintain the fence between them ; and Chief Justice Parker spoke of the right to have him do so, as an easement in his land.

In the court of appeals of New York, Chief Justice Denio assumed, as settled beyond question, that there might be a valid prescription by which the owner of land might become bound to maintain perpetually the whole of the division fence between his and the adjoining land ; and said that he did not entertain any doubt " but that, when such prescription is established, it fastens itself upon the land charged with the burden and in favor of the tenements benefited by it.". *Adams* v. *Van Alstyne,* 25 N. Y.

232, 235. And in two cases in inferior courts in that state covenants to erect and keep in repair division fences have been deemed covenants running with the land and binding the assigns of the covenantor. *Blain* v. *Taylor*, 19 Abbott Pract. 228. *Duffy* v. *New York & Harlem Railroad Co.* 2 Hilton, 496.

In *Easter* v. *Little Miami Railroad Co.* 14 Ohio State, 48, after a careful review of the leading cases in this Commonwealth and elsewhere, a positive opinion was expressed that, in a deed to a railroad corporation of a right of way over land of the grantor on which its track had been laid out, a covenant that the grantor, his heirs and assigns, would build and forever keep up a fence on each side thereof through the grantor's land, was a covenant running with that land; and it was held, that an assignee of that land was so far bound thereby that he could derive no advantage from its breach.

The only difference of opinion manifested in the cases cited at the bar, as to the operation of an agreement to build a fence, by way of charging the land with the obligation, has been where it expressed the undertaking of the grantee in a deed poll. If a grantee accepts such a deed, a promise binding himself and his representatives personally is doubtless implied. *Minor* v. *Deland*, 18 Pick. 266. *Newell* v. *Hill*, 2 Met. 180. But in *Parish* v. *Whitney*, 3 Gray, 516, it was held that such a clause, even if purporting to bind the grantee's heirs and assigns, was not a covenant in any sense, and did not create an incumbrance upon the land. If that decision can be supported, it must be as falling within the rules that no easement in or right affecting real estate can be created by contract of the party, except by deed, and that an agreement not sealed by the party who is to perform it cannot create a covenant or run with the land. *Dyer* v. *Sanford*, 9 Met. 395. *Goddard* v. *Dakin*, 10 Met. 94. *Morse* v. *Copeland*, 2 Gray, 302. *Maine* v. *Cumston*, 98 Mass. 317, 320. *Wright* v. *Wright*, 21 Conn. 329, 342. *Standen* v. *Chrismas*, 10 Q. B. 135. *Bickford* v. *Parson*, 5 C. B. 920. On the other hand, it has been held in Vermont and New Hampshire, that such a promise by the grantee in a deed poll, for the benefit of the adjoining land of the grantor, who retained no other interest in the land granted,

was equivalent to a covenant running with the land, and created an incumbrance thereon. *Kellogg* v. *Robinson*, 6 Verm. 276. *Burbank* v. *Pillsbury*, 48 N. H. 475. But the present case does not require us to consider the effect of such a stipulation when not under the seal of the promisor; nor whether, as suggested in *Burbank* v. *Pillsbury*, an obligation not amounting to a covenant or other charge upon the land, but which might be enforced by a court of chancery in its discretion, is an incumbrance, the effect of which can be assessed in damages by a jury in a court of common law.

In the deed now before us, the covenant to maintain a fence upon the line of division between the land granted to the railroad corporation and the lands retained on either side thereof is made by the grantor, and is in terms declared to bind his heirs and assigns and to be intended to be perpetual and obligatory upon him and all persons who shall become owners of the lands on each side of the railroad, and this obligation is imposed upon all of them only as owners and by virtue of their ownership. It would be difficult to express more clearly an intention that the duty of maintaining the fence should be a charge upon these lands into whose hands soever they should come. The manifest purpose was to regulate the mode of occupying the lands retained, for the purpose of securing to the grantees the full beneficial use of the land granted, by establishing a permanent barrier to prevent all persons and cattle from straying upon it. The necessary conclusion is, upon principle and authority, that the terms of Coffin's deed conveyed to his grantees an interest in the nature of an easement in his adjoining lands, and thus created a sufficient privity of estate between them and his assigns, to support the covenant to maintain the fence as a covenant running with the lands adjoining; and that such easement and covenant constituted an incumbrance, which was a breach of the covenant against incumbrances in the subsequent deed to the plaintiff, upon which this action is brought. It was therefore rightly ruled at the trial, that the clause in Coffin's deed did not create a merely personal obligation, but constituted an incumbrance upon his adjoining lands.

Questions have sometimes arisen upon the effect of a covenant, the burden of which runs with the land, as against an assignee of part of the land charged with the burden. Where the assignees are tenants in common, they have been held jointly liable upon the covenant. *Morse* v. *Aldrich.* 1 Met. 544. *Merceron* v. *Dowson*, 5 B. & C. 479 ; *S. C.* 8 D. & R. 264. Upon covenants to keep in repair, the assignee of part of the land has been held liable for not repairing his part. Shep. Touchst. 199. *Ards* v. *Watkin*, Cro. Eliz. 637, 651. *Congham* v. *King*, Cro. Car. 221 ; *S. C.* 1 Rol. Ab. 522 ; W. Jon. 245. *Bally* v. *Wells*, Wilmot, 341, 346 ; *S. C.* 3 Wils. 25, 29. *Stevenson* v. *Lambard*, 2 East, 575, 580. Com. Dig. Covenant, C. 3. And in *Adams* v. *Van Alstyne*, 25 N. Y. 232, 235, Chief Justice Denio was of opinion that every part of the premises charged with maintaining a fence was as much bound as the whole of the premises originally charged. But no such question is presented by the case at bar. The land conveyed by the defendants to the plaintiff included the line upon which the fence was to be maintained ; and no point appears to have been made by the defendants at the trial, that, if the clause in Coffin's deed created any charge upon the plaintiff's land, it did not affect the whole of it.

The obligation to maintain the fence, being a continuing charge upon the land, was not impaired by the omission to perform it for more than twenty years, without any evidence of its having been released or extinguished. *Arnold* v. *Stevens*, 24 Pick. 106. *Bannon* v. *Angier*, 2 Allen, 128.

The covenant upon which this action is brought is the covenant against incumbrances in the deed to the plaintiff, dated May 24, 1866 ; the breach of this covenant and cause of this action arose at that date, and could not be affected by the statute of limitations until twenty years afterwards. *Clark* v. *Swift*, 3 Met. 390.

The remaining questions presented by the report relate to the kind of fence which the obligation in Coffin's deed required to be maintained on the lands since conveyed by the defendants to the plaintiff, and to the measure of damages occasioned by the incumbrance thus created upon these lands.

The terms of the covenant " to maintain a sufficient fence through the whole length of that part of the railroad which runs through " these lands, which is declared to be perpetual and obligatory upon " all persons who shall become owners of the land on each side of said railroad," clearly imply that a fence is to be maintained on each side of the strip of land granted by Coffin to the railroad corporation ; and that such fences are to stand wholly on the lands on either side, and not half on these lands and half on the land of the railroad corporation.

What would be a sufficient fence on either side of the railroad to satisfy the requirements of Coffin's deed would not necessarily be the same as the fence required by statute to be maintained between improved lands, to the satisfaction of fence-viewers. Rev. Sts. c. 19, §§ 1 & seq. Gen. Sts. c. 25, §§ 1 & seq. The ruling upon this point was sufficiently favorable to the defendants. *Eames* v. *Salem & Lowell Railroad Co.* 98 Mass. 560. ·

In order to test the accuracy of the instructions given to the jury, it will be convenient to consider the nature and extent of the various obligations, imposed by law or contract upon the owners of adjoining lands, to maintain fences.

By the law of this Commonwealth, as by the law of England, in the absence of any qualifying statute, agreement or prescription, the owners of adjoining lands were not obliged to maintain fences between them ; although any one who did not do so would be responsible for the consequences of his omission, if his own beasts strayed and committed trespass, or if the beasts of others, rightfully upon the adjoining land, trespassed upon his premises. *Rust* v. *Low*, 6 Mass. 90. *Minor* v. *Deland*, 18 Pick. 266. *Thayer* v. *Arnold*, 4 Met. 589. *Pool* v. *Alger*, 11 Gray, 489.

The statutes imposing upon railroad corporations the burden of maintaining fences by the side of their railroads, had not been passed when Coffin's deed was made, and do not apply to railroads constructed before their passage. Sts. 1841, c. 125 ; 1846, c. 271, § 3. Gen. Sts. c. 63, § 43. *Stearns* v. *Old Colony & Fall River Railroad Co.* 1 Allen, 493. *Baxter* v. *Boston & Worcester Railroad Co.* 102 Mass. 383. Independently of such statutes and of any agreement, the taking of land by a railroad corporation for

its road, like a similar taking by the public authorities for a highway, imposed upon the takers no obligation to fence, but left upon the landowner the burden of erecting and maintaining any fences required for the protection of his adjoining land, with the right to recover, as part of his damages, the reasonable expense thereof, if deemed by the jury to be a necessary, natural or probable consequence incident to the taking of his land for the public use. *Morss* v. *Boston & Maine Railroad,* 2 Cush. 536. *First Parish in North Bridgewater* v. *Plymouth,* 8 Cush. 475. *Holbrook* v. *McBride,* 4 Gray, 215, 220.

The obligation to make suitable fences, imposed by the covenant in Coffin's deed, was absolute, and did not depend upon the question whether such fences would otherwise have been necessary or expedient. *Lawton* v. *Fitchburg Railroad Co.* 8 Cush. 230. Yet the refusal of the judge to instruct the jury, as requested by the defendants, " that the proper measure of damages is what the railroad corporation could recover in an action for a failure to perform the stipulation contained in the deed, regarded as an incumbrance," affords the defendants no ground of exception ; for the real issue in the case was not what the railroad corporation could recover of their grantor, but how much the value of the lands charged with the obligation of maintaining the fence was affected by that obligation ; and the instructions given directly met this issue, by instructing the jury that the rule of damages for breach of the covenant sued on was a just compensation for the real injury resulting from the incumbrance, and that they should inquire how far the existence of this incumbrance impaired the value of the estate to the owner, and what would be the difference in its fair market value by reason of the existence of this incumbrance. *Wetherbee* v. *Bennett,* 2 Allen, 428.

In estimating this difference in value, evidence of the cost of building and maintaining a sufficient fence was doubtless admissible, and it was introduced by both parties at the trial without objection. But, as the judge correctly ruled, the cost of building and maintaining the fence was not to be treated as an additional item of damages. Nor was such cost to be taken into consideration at all, except so far as it exceeded the cost of maintaining

any fences which would reasonably have been required to prevent the straying of persons or cattle upon or from those lands, if no express agreement had been made ; for the burden of such fencing would have rested upon the owner of the· lands, independently of the covenant. It follows that the instruction that the jury should include in the depreciation of the estate, if any, by reason of the incumbrance, the cost of building and maintaining the fence, was not sufficiently guarded, and would naturally tend unduly to enhance the damages; for the injury to the estate by the existence of the incumbrance could not exceed the extent of the obligation thereby imposed upon the owner, beyond what the situation and circumstances of the estate would otherwise have required him to do in the matter of fencing for its reasonable protection; whereas from the instruction given the jury might well infer that the whole cost of building and maintaining the fence must be included in estimating the diminution in the market value of the estate and the consequent injury to the· plaintiff. Upon this ground only, the verdict must be set aside, and a

*New trial ordered.*