# JUAN R. GARZOT, Plff.,

*v.*

# FAJARDO SUGAR COMPANY ET AL., Dfts.

San Juan, Equity, No. 976.

RE INJUNCTION AS TO RAILROAD SWITCH.

**Contracts—Construction of Written Instrument.**

1, 2, 3. In the construction of a written instrument the intention of the parties as shown by the whole contract is to be carried out, and to that end words are to be taken in their ordinary sense; when doubt arises as to the proper meaning of the contract, but not otherwise, the preliminary negotiations between the parties may be considered; if there is a general description, specific descriptions following it will be interpreted in the same sense; a contract will be so construed as to render it valid rather than invalid; the practical contemporary construction given the contract by the parties themselves will be considered; and a particular clause will be construed against the party making the grant.

**Injunction—Irreparable Damage.**

4. To entitle a party to an injunction on the ground that irreparable damage will be caused to his property, he must generally prove that the damage cannot be reasonably remedied by a money compensation.

**Words and Phrases—"Branch Line"—"Siding"—Switch—Construction of Contract.**

5. A "branch line" means a substantive railroad track tributary to a main line. A "siding" relates more especially to a side track on which cars may be placed and which can be used as a switch for the passage of trains. A "switch" is a siding joined at both ends to the main track. Where the plaintiff gave the defendant permission to lay a switch which has become deteriorated, the defendant may replace it with a new one without further consent.

Construction of Contract.

      6. Where the plaintiff granted defendant authority to fence in its railroad in such a way as to cut his property in two, unless agreed to by the parties, he is entitled to make such use of the property fenced in as will not destroy its use as a whole to him.

Opinion filed July 24, 1916.

———

*Mr. F. H. Dexter* for plaintiff.

*Messrs. Geo. D. Graves* and *H. G. Molina* for defendants.

HAMILTON, Judge, delivered the following opinion:

This is a suit designed to enjoin defendants from constructing a branch line of railroad along a main line and from putting up wire fences along the right of way, of which the defendants or some of them are in possession, running through the property of the plaintiff. The right of the defendants grows out of a certain agreement called "mutual assignments" entered into May 9, 1906, by Juan R. Garzot and the Central San Cristobal. The plaintiff contends that the consideration for this agreement was profits to be derived from tickets of the Central to be used at his store near by, and, when a law was passed by the local legislature forbidding the use of such tickets, the said plaintiff sought to have this contract canceled by this court by means of a petition in the receivership of San Cristobal. Upon consideration, this court denied the petition, and from this decree the plaintiff has appealed to the circuit court of appeals for the first district, and the appeal is still pending.

Garzot v. Fajardo Sugar Co.

The contract, so far as now material, is as follows:—

"First. The spouses Juan R. Garzot y Romero and Doña Rosario Aguayo de la Fuente, do hereby grant to the Central San Cristobal represented herein by its president, Mr. Phillip Gurdom Mumford, or his successors, permission for the construction of a railroad line on the lands of the properties San Francisco and Fortuna, above described, for the sole and exclusive purpose of hauling cane, seed, fertilizer, wood, agricultural implements and all other stuff not being the object of commerce or payment, from the colony or colonies now held or which may be held hereafter by the Central San Cristobal aforesaid, which contract shall be in force for the Central San Cristobal or its successors for an indeterminate period of time.

"Second. It is agreed that the right of way shall be ten meters wide along a stretch from the boundary with the road leading from Naguabo to its bay up to the boundary with the road leading from Naguabo to Juncos.

"Third. The Central San Cristobal is prohibited from laying side tracks or switches in connection with the main line running through the properties object of this contract, unless it be at the request of Mr. Garzot.

"Fourth. The Central San Cristobal binds itself to keep open the drainage of the ditches of the track, and to keep and maintain in good condition wire fences of three wires along both sides of the track, keeping in good condition the side ditches.

"Fifth. If the track aforesaid should become the property of another person, corporation, company, or any other juridical entity, and it should be used for other purposes than that set forth in clause first of this contract, the Garzot-Aguayo spouses shall thereby be relieved from the obligations of this contract,

Garzot v. Fajardo Sugar Co.

and they reserve the right either to ask for an indemnity for the land occupied by the track, or demand a share of the proceeds from the operation of the line."

This suit was brought June 30, 1916, in the local district court of Hunacao, and an order for temporary injunction was obtained, together with a notice in the nature of a rule to show cause why it should not be made permanent. The case was then removed to this court and came up for decision, the court under Federal practice treating it as an injunction *pendente lite*. This court on July 18, 1916, refused to continue the preliminary injunction, and the parties thereupon submitted the case for final decree upon the same evidence that had been produced upon the preliminary hearing.

1. This case requires construction of the contract called in its caption "mutual assignments," cesiones mutuos, made by the parties by a public instrument above mentioned. The principal question will be the meaning of the paper in regard to the switch which it is now sought to enjoin. There is no doubt as to the general rules of construction of any written instrument. The intention of the parties is to be carried out as far as possible, and to that end words are to be taken in their ordinary sense, and the whole contract looked at rather than an isolated part. Where doubt arises as to the proper meaning, but not otherwise, the preliminary negotiations between the parties may be considered. If there is a general description, specific descriptions following it will be interpreted in the same sense. A contract will be so construed as to make it valid rather than invalid, and the practical contemporary construction by the parties themselves will throw a great deal of light upon the matter. There is sometimes a construction against a party where he alone signs

IX. Porto Rico.—7.

a contract, but that would not apply in the case at bar, a public instrument solemnly executed by both parties in interest. Sims, Contr. 211; Bronson v. Coffin, 108 Mass. 175, 11 Am. Rep. 335. It is nevertheless true, however, that in any particular clause the construction will be against the party evidently making the grant. This may apply, respectively, to each of them.

2. The plaintiff alleges hardship, and claims that there has been a practical failure of consideration to him in that his motive in giving the grant of a right of way for a railroad was to get the benefit of the corresponding grant by the other party by means of tickets to send its employees to shop at his store. This having ceased, he claims that the right of way for which it was the consideration should also cease. This point was carefully considered by the court when brought up by the plaintiff in the Central San Cristobal receivership. It held against the present plaintiff, and the matter now stands on appeal in the circuit court of appeals. As the contract signed by the plaintiff was made not only with and for the Central San Cristobal, but by its terms should remain "in force for the central, or its successors, for an indefinite period of time," it is not perceived that there is any difference in the situation at present from when the court first considered the matter. It does not seem proper, therefore, to reconsider the general point as to the validity or failure of the original grant.

3. It is true that plaintiff now alleges that his contract violates the Sherman Anti-Trust Law, and also the 14th Amendment of the Constitution in that it granted monopoly to the Central and its successors. These points were not discussed in the receivership case, but were nevertheless implied in the decision. If they have merit they can be urged in the appellate court. It

Garzot v. Fajardo Sugar Co.

is not believed, however, that the plaintiff can avoid his own contract on such grounds. There is no allegation of duress, nor is it sought directly to avoid the contract on any other ground. The bill in this case was drawn upon the theory that building the switch will cause irreparable damage. Nor has the bill been framed to set up these additional points any more than was the receivership bill so framed. If they can be considered here, they can as well be considered in the case now pending in the appellate court, and it does not appear to be necessary to pass upon them.

4. A preliminary question, therefore, is whether irreparable damage has been proved, that is to say, damage to the corpus of the property, or its essential use, which cannot reasonably be remedied by money compensation. The evidence does not show any such damage. In the first place, for the purposes of this case the general right of way must be presupposed as valid. That, under the contract, was to be 10 meters wide, and the evidence shows that the track in question constitutes a mere switch running alongside the main track for several hundred meters, but all within the 10 meters width of the right of way. It would seem to be implied from the grant of the right of way that the plaintiff himself could not use it for his own purposes, otherwise it would not amount to a grant of anything except the 5 or 6 feet actually occupied by the rails and ties. Such a construction could not be tolerated. This was the only injury testified to by the plaintiff, as the disturbance of the soil by the incidental cutting to lay the switch cannot be considered as material.

5. The bill as drawn for the lower court is not clear in all respects. It alleges incidentally that the defendant intends to

put up a fence, but the main allegations relate to an alleged branch line of railroad. An amendment at the hearing adds the word "siding." A "branch line" means a substantive railroad track tributary to a main line. There is no evidence of anything of this kind in the case. "Siding" relates more especially to a side track on which cars may be placed and which can be used as a switch for the passage of trains. The evidence in this case shows that what was contemplated and what was actually made was a switch, a siding joined at both ends to the main track. It seems to the court that a switch can be fairly considered within the meaning of the word "siding," and the case will be so treated. No case is made as to a branch track.

The facts seem to be that at one time there was a switch at or near the edge of the Fortuna property, and the parties, or at least the railroad, preferred to have it moved to another place. The mayordomo of the plaintiff went with the railroad officer in charge and agreed upon a certain place. Somewhat later the railroad put in the necessary frogs and some rails at this point, but, upon the objection of the plaintiff, deferred doing any thing further at the time. The plaintiff never assented to anything more being done. Meantime, the railroad had removed the original switch, and without asking any further permission proceeded on the completion of the switch now complained of.

The Central, in paragraph third, is expressly "prohibited from laying branch lines or switches of the general line within the properties object of this contract, unless requested by Mr. Garzot." The evidence convinces the court, however, that the original switch was laid by consent, if not at the request of Garzot, and of it he has not complained and does not complain. The switch now complained of is merely a substitution for the old

one, and its location was picked out and agreed upon by the railroad and the representative of Garzot, and the work actually begun. It is not shown that the change is of any disadvantage to Garzot, and it seems to the court that it would be a very technical construction of the contract to require a continuous consent by Garzot to each step of what he must be held to have agreed to in advance. Once having given his consent, in person or through a proper representative, he cannot allege that the contract has not been complied with. The contract must be reasonably construed so as to advance the purposes the parties had in view at the time it was made, that is to say, to build and operate a railroad track on the lands of Fortuna to be used solely and exclusively for the transportation of cane, seeds, fertilizers, fire wood, agricultural implements, and such other hauling as may not be the object of commerce or payment from the colony or colonies of the Central San Cristobal and its successors. The right is granted, therefore, for a private railroad, and not a common carrier railroad. No proof was offered that this is not the character of the railroad or the manner of the transportation, and the switch in question is shown to be fairly located to carry out this purpose. The conclusion, therefore, is that the defendant was acting within its rights under the circumstances.

6. The parties have agreed in open court that gates shall be placed in the fence defendant is running along on each side of the right of way the full length of the plaintiff's property, but, as the matter has been under consideration, it may be said that, in the mind of the court, placing a double impassable barrier across the middle of a man's property would damage it irreparably. It is a case of where the whole is greater than its parts. Laying a track does not materially disturb the use of the prop-

Garzot v. Fajardo Sugar Co.

erty as a whole, as there may be free access across the track at almost all times from one part of it to another. The contrary is true when the property is cut into two mutually inaccessible halves. This is an injury touching the corpus, and should be prevented unless the words of the contract require it. If the plaintiff cannot waive the placing of the fence, he is at least entitled to such a use of this privilege or franchise by the railroad that it will not practically destroy the use of his property as a whole.

It follows, therefore, that the plaintiff cannot complain of the laying of the switch, but that the fences must have gates or gaps of a character to give the plaintiff, his agents, and employees, reasonable access across the right of way from one portion of his property to another. The bill will be dismissed, and the costs divided between plaintiff and defendants.

It is so ordered.