Giffert vs. West.

## GIFFERT VS. WEST.

| 33 | 617 |
|---|---|
| 74 | 476 |
| 74 | 479 |
| 33 | 617 |
| 90 | 606 |
| 33 | 617 |
| 103 | 487 |
| 105 | 320 |
| 33 | 617 |
| 53 LRA | 162 |
| 165 NY | 126 |

WARRANTY: DAMAGES: EVIDENCE. (1) *Affirmation by vendor, when a warranty.* (2, 3) *Variance between pleading and proof as to express or implied warranty.* (4, 5) *Assignment of written instrument, how far an implied warranty.* (6, 7) *Rule of damages stated.* (8) *Damages for breach of warranty of indorsement of note.* (9, 10) *Evidence of indorser's insolvency.*

REVERSAL OF JUDGMENT: (11) *Refusal to submit material evidence.*

1. An affirmation made by the vendor at the time of sale amounts to an express warranty, if the facts alleged or proven show it to have been so intended and received.

2. Where the complaint avers an *express warranty*, which is not proven, but the facts put in evidence without objection show an *implied* warranty to the same effect, it seems that the *variance* should be disregarded, or an immediate amendment allowed.

3. In this case, no objection was taken to a variance of the kind above stated, until after verdict, and after a motion for a new trial was denied, when it was taken on a motion in arrest of judgment. *Held*, too late. *Anderson v. Case*, 28 Wis., 505, distinguished.

4. The doctrine of this court in *Hurd v. Hall* (12 Wis., 112, 135), and subsequent cases, that in the assignment of an instrument or contract in writing, though not negotiable, for a full and fair price, the assignor impliedly *warrants* that it is valid, and that the obligor is liable upon it, unless it clearly appears that the parties intended otherwise — approved and followed.

5. Such implied warranty is limited to the *validity* of the contract or chose in action sold, or the *liability* of the persons appearing as parties to it, and does not include their ability to discharge its obligation or to furnish satisfaction out of their property.

6. For a breach of warranty in the sale of chattels, the *measure of damages* is the difference between the actual value of the chattels and what their value would have been if they had been as warranted; to which may be added, in proper cases, the reasonable expenses incurred by the purchaser in consequence of such breach. And it seems that this rule is applicable to a warranty in the sale of *a chose in action* as well as in the sale of goods.

7. The assignee of a chose in action, with implied warranty of its validity, has a right to bring an action for its collection, and, if defeated therein, to recover from his assignor the costs and expenses so incurred.

8. Plaintiff took an assignment from defendant of a note, with an implied warranty that the indorsement thereof by one H. was valid. The note could not be collected of the makers, who were insolvent, and his action against H. as indorser was defeated by proof that the indorsement was usurious. In an action upon defendant's warranty: *Held,* that the measure of damages is the difference between the value of the note without H.'s indorsement, and what it would have been worth *with* such indorsement, together with the reasonable expenses of plaintiff in the suit against H.

9. In such an action, therefore, it was error to reject evidence offered by defendant to show that H. was *insolvent* when the note was assigned, and still continued to be so; such evidence bearing directly upon the question of the damage to plaintiff from his failure to get H.'s valid indorsement.

[10. It seems that the general *presumption* in favor of solvency would arise in this case, and that the *burden of proof* would be upon defendant to show that H. was insolvent; but it was not necessary to decide that question here. Per DIXON, C. J.]

11. Where there is some evidence proper for the jury to consider, bearing upon a material question of fact, and the court refuses to submit such question to the jury, this is ground of reversal.

APPEAL from the Circuit Court for *Sauk* County.

*West* sold and delivered to one Bishop a promissory note for $380, then past due, drawn by Noyes & Blevin to the order of Nathan Halloway, and indorsed by Halloway in blank. Bishop afterwards sold and delivered the note to the plaintiff, *Giffert*, who obtained judgment thereon against the makers, upon which an execution was issued and returned unsatisfied. *Giffert* then sued Halloway, the indorser, who successfully de-

Giffert vs. West.

fended on the ground of usury in the indorsement. *Giffert* then brought this action against *West*, to recover damages for the breach of warranty as to the validity of the indorsement by Halloway. The remaining facts are stated in the opinion. Verdict and judgment for plaintiff, for $576.33 damages, and $84.20 costs ; and defendant appealed.

*C. C. Remington*, for appellant, to the point that it was error to change from the express warranty alleged in the complaint, to an implied one, cited *Walton v. Cody*, 1 Wis., 420. If there was an implied warranty, and Bishop had a right to recover thereon, there could be a recovery of nominal damages only, and the court erred in refusing to so instruct the jury. The same principle applies as in an action on a covenant against incumbrances by a party who has not removed the incumbrance, in which case nominal damages only are recoverable. *Pillsbury v. Mitchell*, 5 Wis., 17. As to the measure of damages, the correct rule on breach of warranty is the difference between the value of the thing at the time of sale, if the warranty were true, and the actual value in .point of fact. 2 Greenl. Ev., § 262. And in case of a note, its amount and interest would, *prima facie*, be the rule. But the court mistook this *prima facie* rule for an absolute one. Where the property sued for in trover is a *chose in action*, as a bill, note, bond or other security for the payment of money, the measure of damages is, *prima facie*, the amount due on the security, the defendant being at liberty to reduce this valuation by evidence of payment, insolvency of the maker, or any fact tending to invalidate the security. Sedgwick on Damages, 512. The same rule has been held applicable in an action for fraudulently transferring a note as valid when it has been paid. *Neff v. Clute*, 12 Barb., '466. In *Jansen v. Ball*, 6 Cow., 629, it was held that the measure of damages on what purported to be an assignment of a judgment, when in fact there was no judgment to assign, was the value of the property which would have been liable to sale on execution, had there been a judgment, and not the amount

of the judgment itself. *Thrall v. Newell*, 19 Vt., 202, was an action by the assignee of a note, void as to one of the makers because of insanity. Judgment was had for the face of the note and interest, which was reversed on appeal, because the note was not shown to be of no value as to the other makers. The ability of the maker or indorser to pay the note is a matter of presumption only until the contrary is proven. *Potter v. Merchants' Bank*, 28 N. Y., 641.

*G. Stevens* and *J. W. Lusk*, for respondent, argued that the court did not err in refusing to allow evidence of the pecuniary standing of Halloway, since, his indorsement being void for usury, plaintiff could not have judgment against the indorser. In such case, the measure of damages ought to be the amount for which plaintiff could have got judgment had the indorsement been valid, together with the costs incurred by his unsuccessful attempt to procure it. *Delaware Bank v. Jarvis*, 20 N. Y., 226. The defect which rendered the indorsement void was peculiarly within the knowledge of *West*. No intimation was given by him that such defect existed, and the law implies a warranty on his part that it did not exist. 2 Parsons on Notes and Bills, 37, and cases cited; *Lobdell v. Baker*, 1 Met., 193, 3 Met., 469; *Thrall v. Newell*, 19 Vt., 202; *Eaton v. Mellus*, 7 Gray, 566; *Delaware Bank v. Jarvis*, *supra*. *West* put the note upon the market with a void indorsement. In thus disposing of it for a valuable consideration, he impliedly represented to any person who should purchase it, that the indorsement was valid, and became directly responsible to any person who should afterwards purchase it. *Lobdell v. Baker*, and *Thrall v. Newell*, *supra*.

DIXON, C. J. The action is to recover damages for the breach of an express warranty that Halloway was an indorser of the note, that proper steps had been taken to charge him as such; and that he was bound and legally liable in that capacity at the time of the transfer of the note by the defendant to

Bishop, as whose assignee of the note and of the contract of warranty the plaintiff brings suit. Such is the cause of action stated in the complaint, in which the plaintiff avers "that for the purpose of effecting such sale and transfer, and to induce the said Bishop to accept and purchase said note, the said defendant represented, promised and agreed to and with said Harry Bishop, that said indorsement of the said Nathan Halloway was a good and valid indorsement; that he, the said defendant, had taken the proper steps in law to fix the liability of said Nathan Halloway as such indorser; and that he, the said Nathan Halloway, was then and there bound and legally liable as an indorser of the said note; which representation was relied and acted upon by the said Harry Bishop, and without the making of which representation and promise, he, the said Harry Bishop, would not have taken the same; whereas, in truth and in fact, the said indorsement of the said Nathan Halloway was then and there usurious and void," etc. This agreement and representation is averred to have been made when the contract of sale was consummated; and it is a well settled principle of law, that an affirmation made by the vendor at the time of the sale amounts to an express warranty, if it appears, on the facts stated or proven, to have been so intended and received. *Coolidge v. Brigham*, 1 Met., 547, 552, and *Thrall v. Newell*, 19 Vt., 202, 208, and authorities there cited.

The suit being thus upon an express warranty, the question is presented, whether a recovery can be had for the breach of one which was implied, the express warranty being in whole or in part unproved, but the facts shown being such as to establish an implied one of the same effect as that which is alleged to have been expressly made. We are inclined to think that in such case the variance should be disregarded, or an immediate amendment allowed, if objection is taken on the trial. See *Leopold v. Van Kirk*, 27 Wis., 155; *Same v. Same*, 29 id., 549, 556. In this case, the alleged express warranty was in part unproved, and we think the court was right in allowing

the trial to proceed, and in instructing the jury that the plaintiff might have a verdict for the damages sustained by reason of a breach of the implied warranty, in case the jury so found under the instructions given. And especially do we think the court was corrrct in thus disregarding the variance, since no objection of the kind was taken upon the trial, nor until after verdict, and after a motion for a new trial had been made and overruled. The objection was first taken, as we understand it, upon the motion in arrest of judgment. It was then too late to make the objection. *Supervisors etc. v. Decker*, 30 Wis., 628, 629, and authorities there cited; *Sherman v. Johnson*, 56 Barb., 59. In the latter case, where the defendant had sold to the plaintiff an account in his own favor against the government, and the complaint was that he had made certain false and fraudulent statements to the plaintiff at the time of sale, it was held that the plaintiff could still recover, if, upon the evidence taken without objection, he proved enough to sustain an implied warranty, though no fraud was shown. It frequently happens, as was held in *Neff v. Clute*, 12 Barb., 466, that the same state of facts will support an action in either of two or more different forms, as in that case one for the original consideration, or one for the damage sustained by the fraud. But if, in such or a supposed similar case, the plaintiff fails to make the proofs, or is mistaken about the facts, and so does not establish his right in the form of action adopted, yet if he is permitted to proceed with his evidence, and, without objection, to a verdict upon a good cause of action shown in some other form arising out of the facts set forth in the complaint, or the transaction complained of, no good reason is seen why such verdict should be set aside or the judgment arrested, unless it be under some peculiar circumstances, or for causes like those existing in *Anderson v. Case*, 28 Wis., 505.

And with respect to the question of implied warranty, we are of opinion that the circuit court was correct in the general principle laid down in the instructions. It has sometimes been

held in doubt, whether, upon the sale or assignment of a bill, note, or other chose in action or contract or obligation evidenced by writing, the implied warranty extends beyond the genuineness of the instrument itself, or the mere fact that it is not a forgery, or whether it also embraces the capacity of the contracting parties to make the contract, and their liability upon it as valid and binding in law according the purport of the instrument on its face, and as the same is presented by the seller to the purchaser. The question is not new in this court, but was considered in *Hurd v. Hall*, 12 Wis., 112, 135, where it was said that in the assignment of an instrument or other contract in writing, even not negotiable, for a full and fair price, the assignor impliedly warrants that it is valid, and that the maker or obligor is liable upon it, unless it clearly appears that the parties intended to the contrary. Numerous authorities were cited in support of the rule as there stated, and the same was followed and affirmed in *Lawton v. Howe*, 14 Wis., 241, 250, and in *Costigan v. Hawkins* and *Paul v. Kenosha*, 22 id., 74, 266. We still see no reason to doubt its correctness, but find our views strengthened and confirmed by further examination made at this time. The following cases also clearly sustain or tend to sustain them: *Sherman v. Johnson, supra; Thrall v. Newell*, 19 Vt., 202 ; *Lobdell v. Baker*, 1 Met., 193 ; *The Same v. The Same*, 3 Met., 469 ; *Delaware Bank v. Jarvis*, 20 N. Y., 226. See also *Coolidge v. Brigham*, 1 Met., 547, 551, and *Polhill v. Walter*, 3 Barn. & Adolph., 114. In *Lobdell v. Baker*, last case, Chief Justice SHAW says: " Whoever takes a negotiable security is understood to ascertain for himself the ability of the contracting parties; but he has the right to believe, without inquiring, that he has the *legal obligation* of the contracting parties appearing on the bill or note. Unexplained, the purchaser of such a note has the right to believe, upon the faith of the security itself, that it is indorsed by one capable of binding himself by the contract which an indorsement by the law imports. It is an averment to that effect, on the part of him who

procures such indorsement and puts the note bearing it into circulation."

But though we think the learned judge who presided at the trial was so far right in his conclusions, we are, notwithstanding, of opinion that he was in some other respects wrong, both in the instructions given and in the requests to charge refused, as well as in the exclusion of evidence.

To speak first of the evidence which was improperly excluded, it seems very clear to our minds that the testimony offered for the purpose of showing the insolvency of Halloway should have been received. It was admissible, if the insolvency was established, to reduce the damages which the plaintiff would otherwise be entitled to recover. The value of a chose in action, like a note or other promise or obligation in writing for the payment of money, is intrinsically nothing. It cannot be estimated as we estimate that of a horse, an acre of land, or other article of visible, tangible property. Its value depends on the pecuniary condition, or ability to pay, of the parties liable thereon; and hence the proper inquiry, where the value is in controversy, always is, Are the parties to it solvent and able to pay their debts? The value of the note here, or rather of Halloway's indorsement upon it, supposing such indorsement to have been valid, is dependent on his solvency or pecuniary ability to pay the sum for which it was given; and such value was in controversy, and the proper subject of investigation, because therein consisted the loss or damage sustained by Bishop, or the plaintiff as his assignee, in consequence of the contract of indorsement being void on the ground of usury. If Halloway then was and still is pecuniarily worthless, so that he could pay nothing, and nothing could then have been or now be collected from him in satisfaction of the note, then it is clear that neither Bishop nor the plaintiff as his assignee has lost anything by reason of the invalidity of the indorsement, save only the costs and expenses incurred by the plaintiff in his action against Halloway to charge him as indorser, or to

test and determine the validity of his supposed contract of indorsement. Evidence was received on the part of the plaintiff, by the return of the sheriff on the execution issued upon the judgment obtained on the note against Noyes and Blivin, the makers of it, of their insolvency, or of the inability of the sheriff, after diligent search, to find any property belonging to them out of which to make the execution. Had Noyes and Blivin been possessed of property and able to pay, and had the sheriff made the amount of the execution out of their property, no doubt the defendant could have shown the fact in diminution of the damages claimed by the plaintiff. In that case, it would have been apparent that no damages had been suffered by the plaintiff in consequence of the breach of the implied contract of warranty, except only such as he had sustained by the payment of the costs and expenses of the suit against Halloway. It is hardly less apparent, supposing the promise or legal liability of Halloway to have been and still to be of no pecuniary value, that neither Bishop nor the plaintiff has sustained any loss by reason of not having obtained it. The implied warranty is limited to the validity of the contract or chose in action sold, and to the liability of the persons appearing as parties to it. Such warranty does not include the pecuniary responsibility of the parties to the contract, or their ability to discharge its obligations or to furnish satisfaction out of their property. The pecuniary condition and ability of the contracting parties are things which the purchaser is supposed to ascertain and know for himself, and for which he does not hold the seller responsible, except upon special agreement required and entered into for that purpose. The pecuniary responsibility of the indorser, Halloway, was not a matter embraced in any implied warranty arising upon the facts of the present case.

In an action for breach of warranty on a contract of sale of chattels, the measure of damages is the difference between the value of the chattels, if they had corresponded with the war-

ranty, and their actual value, to which may be added, in proper cases, the reasonable expenses incurred by the purchaser in consequence of such breach. No reason is perceived, all other circumstances being equal, why this familiar rule is not as applicable to a breach of warranty on the sale of a chose in action as to one on the sale of goods or other personal property. By restoring to the purchaser all that he has lost on account of the breach, it seems to be the rule best calculated to do justice in either case. In case of the sale of goods, the damage is arrived at by direct proof of the difference in value. But where the thing sold is a contract or chose in action for the payment of money or delivery of other article of specified value, the loss is ascertained by proof of the pecuniary responsibility of the person supposed to have been the debtor, or promisor, or party otherwise appearing to have been liable upon the contract. If the contract or obligation assigned be of some different kind, then other evidence may be resorted to according to circumstances, as in *Hurd v. Hall*, where the value of the school land certificates was said to be governed by the value of the realty which they concerned, and to which they were supposed to be annexed.

For convenience in judicial proceedings, it is a presumption generally indulged, that the maker of a promise or obligation is pecuniarily responsible and able to fulfill his promise or agreement. It has been said that insolvency is never presumed, but that an ability to meet all his engagements will be presumed in favor of every man. *Prima facie*, therefore, the value of a note or other contract in writing, the validity or due execution of which is shown, is the amount for which it was given, with interest; from which it follows that the burden of proving the insolvency of the maker or person otherwise liable thereon, rests on the party placing his defense on that ground. This presumption has most frequently been indulged in the action of trover, where the property sued for was a chose in action, as a bill, note, bond or other security for the payment of money

where the validity of the instrument has been shown or admitted; though it has sometimes also been indulged in other actions. It is not improbable that the same presumption arises here with respect to the solvency of Halloway, notwithstanding he was not in law an indorser of the note or legally liable thereon. The defendant voluntarily assumed the burden of showing his insolvency, which saves all necessity for investigating the question, if indeed there can be any question about it.

And the rule of damages above laid down, if not sanctioned by any direct adjudication, is at least sustained by numerous decisions in other very similar cases. It is the rule which obtains in actions of trover for the conversion of choses in action, as notes, bills, bonds and the like, and in other kindred actions. Sedgwick on the Measure of Damages (4th ed.), 569, and authorities cited; *Sherman v. Johnson*, *Thrall v. Newell*, and *Coolidge v. Brigham*, cited above; *Neff v. Clute*, 12 Barb., 466; *Walrod v. Ball*, 9 id., 271; *Potter v. Merchants' Bank*, 28 N. Y., 641; *Jansen v. Ball*, 6 Cow., 628; *Patterson v. Westervelt*, 17 Wend., 543; *Kellogg v. Manro*, 9 Johns., 300. In *Coolidge v. Brigham*, where, upon the sale of goods by the plaintiff to the defendant, the latter delivered a note with a forged indorsement, the court said: "The plaintiff was at liberty either to restore the note to the defendant, or to retain it and resort to his action on the warranty. In the latter case, the measure of damages will be *the difference between the amount of the note and its actual value*, whatever that may be."

And in the present case, the note remaining uncollected against the makers, the measure of damages will be the difference between the actual value of the note without the indorsement of Halloway, and what its value would be if it had been so validly indorsed, together with the reasonable costs and expenses incurred by the plaintiff in his attempted collection of it in the suit against Halloway. It was ruled, and as we think correctly, in just such a case, *Delaware Bank v. Jarvis, ubi supra*, that the party accepting the transfer of a chose in action is at

liberty to act upon the implied assertion of the validity of the paper, and to bring an action for its collection; and when defeated, he is entitled to recover the costs incurred by him from his assignor.

The defendant requested the court to instruct the jury as follows : " That if the jury find from the evidence that on the sale and transfer of the note in question from *West* to Bishop, Bishop asked of *West* to warrant the note, on the ground that Halloway was holden to him as indorser, and that *West* replied and said it was doubtful whether he was holden, and refused to warrant the note, in such case there was no implied warranty that Halloway was holden as indorser." The court refused to grant the request, for the reason, as stated, that there was no evidence to authorize it, and said to the jury : " I judge that the meaning of the defendant was, that he was asked to indorse the note generally, and not to warrant that the note was not void for usury."

From the evidence as reported to us (and the bill of exceptions is certified to contain it all), we can not resist the conclusion that the court was wrong, both in the refusal to instruct as requested, and in the remarks subsequently made to the jury. We can not understand the testimony of the defendant as the learned judge did ; and although such testimony was in some respects contradicted by that of the plaintiff and of Bishop, yet it was quite sufficient to justify the request to instruct which was made, and to take the case to the jury upon the proposition of fact involved in, or which was assumed as the basis of, such request. The testimony was such as to forbid the court from withholding it from the consideration of the jury, whose duty it was, under the circumstances, not only to construe it, but to decide upon its weight and credibility, and thus to settle the question of fact as between the different and somewhat conflicting statements of the several witnesses.

We see no other errors in the trial and proceedings; but for these the judgment must be reversed, and a new trial awarded.

*By the Court.* — It is so ordered.