[Filed February 29, 1888.

GOVE & COMPANY, RESPONDENT, *v.* THE ISLAND CITY MERCANTILE & MILLING COMPANY, APPELLANT.

CONTRACT—GUARANTY—CONSTRUCTION.—In a contract to fit up a flouring mill with "improved mill machinery," for the manufacture of flour therein, it was agreed, among other things, that when the mill had been changed in accordance with the plans and specifications agreed upon, it should have a given capacity, and that the quality of the flour to be therein manufactured should be equal to that made by "any mill in Eastern Oregon." *Held,* that this guaranty was made upon the basis of the water-power formerly used in operating the mill, and that a failure to comply therewith was a good defense to an action for a deferred payment to be made upon competition and acceptance of the mill.

SAME—CONDITION PRECEDENT—WAIVER.—Where a contractor agrees to make alterations in a mill for the purpose of putting improved machinery in the same, the owner of the mill does not, by continuing the use of the mill, waive the performance of conditions precedent to a payment to be made by him for such services.

SAME—ACTION ON—DEFENSE—DAMAGES.—Where one defends an action to recover a deferred payment to be made by him upon the completion of the mill, upon the ground of a failure to comply with the contract under which the mill was constructed, he cannot recover general damages for such failure.

APPEAL from Union County.   Reversed.

*Rufus Mallory,* and *R. Eakin,* for Appellant.

*Ramsey & Bingham,* and *T. H. Crawford,* for Respondent.

THAYER, J.—It appears from the bill of exceptions herein, that the respondents were contractors and builders, engaged in furnishing and putting up what is known as the "roller process" for manufacturing flour. The appellants had a flouring mill at Island City, Union County, Oregon, and were engaged in operating it. The mill was the old style "burr process," was run by water-power, the water being conducted in a ditch to the mill from the Grand Ronde River.

The respondents about the last of May or 1st of June, 1886, visited the appellants at their mill, and after examining it and the water-power by which it was run, prepared and delivered to appellants a written proposition, of which the following is the substance:—

"We hereby agree to furnish you the following specified machinery and furnishings for your flour mill at Island City, in the county of Union, and State of Oregon, to wit: [Here follows description of articles.] To set up and connect machinery inside of the mill-house and elevator. The following old machinery, said to be in good repair and condition, fit for use, to wit, one thirty and a half inch Leffell wheel, one Eureka lengthened scourer, together with all old machinery, belting, and material that is good and suitable now in the mill, and owned by you, is to be used in connection with the new machinery furnished by us in the construction of the mill. We are to perform all the millwright labor necessary to set up and connect said machinery, build the necessary elevators and spoutings, and connect said machinery to the main power shaft by belt, and place the whole in good running order, and construct the required wheat, flour, and offal bins, etc.; we to raise the roof and enclose the same, putting in the necessary windows, etc.; and the millwright work is to be done in a thoroughly workman-like and substantial manner, no material to be furnished for or repairs to be made by us upon the building, except to raise roof to accommodate the machinery. We agree that the machinery and material furnished by us shall be first-class of its kind and suitable for

the purpose used.   We are to make all necessary plans for the mill, and when the mill is constructed according to said plans we guarantee that it shall have a capacity of sixty barrels of flour in twenty-four hours' time, and that the mill when it is completed shall be capable of making as good flour and as much flour per bushel of wheat as any mill in Eastern Oregon when grinding the same kind of wheat, the mill to be under our control until it is accepted by you; you to furnish wheat and bear all expenses of operating the mill from the time of starting it, and when our guarantee is fulfilled then you are to immediately accept the mill.   We agree to furnish and construct as specified, for the sum of eight thousand one hundred and thirty-four and twenty-five hundredths dollars ($8,134.25) to be paid by you as hereinafter provided.   We agree to prosecute the work as fast as is reasonable, and to have the mill completed ready to run by September 10, 1886, unless prevented by circumstances over which we have no control; and that after the mill is started up, if any changes or alterations are necessary to make it fill the guarantee by reason of any failure on our part, such changes shall be made at our expense.   Should any changes be made at your request or order, the additional costs, if any, over the original amount mentioned shall be paid by you.

"The terms of payment are to be as follows: Two hundred dollars in cash upon signing your acceptance of this proposition; three thousand dollars in cash when the specified new machines are delivered; two thousand dollars as called for by us during the process of the work; two thousand nine hundred and thirty-four and twenty-five hundredths dollars at the time of completion of the mill, and acceptance of the same by you of the foregoing proposition.   We fully bind ourselves to its provisions.

   (Signed,)                              "O. C. Gove."

The appellants accepted said proposition by written acceptance signed by them, and desired the respondents to ship machinery and perform labor as specified, binding themselves to all its terms and provisions.   The action was to recover the last payment specified in the proposition, the $2,934.25, which was to be made

at the time of the completion of the mill and acceptance thereof, the respondents alleging that they had performed all the conditions of the said contract upon their part. The appellants denied the alleged performance of the contract, and averred the non-completion of the work, and set up a claim to damages for an alleged breach of the guarantee. Several questions were raised at the trial in regard to the construction of the contract; the rights of the appellants under the contract for a violation of its terms by the respondents; and concerning the measure of damages they were entitled to on account of such violation. The contract is clear and explicit, and in the light of surrounding circumstances is easily construed.

The respondents proposed to substitute for the process the appellants were using in their mill to manufacture flour, a new and improved process, the efficiency of which they especially guaranteed. The mill was to be under their control when constructed until accepted by the appellants. The latter were to furnish wheat, bear the expense of operating the mill from the time of starting it, and when the guarantee was fulfilled were immediately to accept it, and were then to make said last payment. The respondents were to demonstrate by a practical test that they had fulfilled their guarantee. The said payment did not mature until that was done; it was a condition precedent to the making of the payment. (*Glacius* v. *Black*, 50 N. Y. 145.) The respondents had no right to demand the $2,934.25 until they had proved by actual trial that the mill had a capacity of sixty barrels of flour in twenty-four hours' time, and that it was as capable of making as good flour, and as much flour per bushel of wheat, as any mill in Eastern Oregon when grinding the same kind of wheat. This was the respondents' proposition; the proposition which appellants accepted, thereby making it binding upon both parties.

The respondents had no cause of action for the recovery of said payment until they established by proof, not only that they had furnished the material and done the work, but that they had constructed a mill with the capacity to manufacture flour in the quantity and of the quality as expressed in the guarantee.

Proof of a *substantial performance* in the furnishing of the material and constructing the mill would be sufficient. It would not be essential to the maintenance of the action in respect to those matters that there should be an exact performance of the contract in every minute particular; for, as said in Addison on Contracts, section 864, "whenever divers acts and things of different degrees of importance are to be done on one side in return for a stipulated remuneration on the other, a performance of all the things in every minute particular is not, in general, a condition precedent to the liability to make some remuneration; but if the contract has been substantially fulfilled, the plaintiff is entitled to maintain an action upon it, the defendant being entitled to such a deduction from the contract price as will enable him to complete the work in exact accordance with the contract." But the capacity of the mill to manufacture the amount of flour in the given time, and its capacity to make as good flour, and as much flour per bushel of wheat as any mill in Eastern Oregon from the same kind of wheat, were conditions going to the *essence* of the contract.

The appellants were evidently induced to make the proposed change in their mill in order to secure these results; otherwise they would not probably have accepted the respondents' proposition. If, therefore, the capacity or capability of the mill, when reconstructed, failed in a material particular to comply with the special guarantee, the respondents had no right of action on account of a refusal to pay the deferred payment, unless the appellants waived a performance of the condition. According to the evidence the respondents did not make the required test to ascertain whether the mill possessed the capacity and capability guaranteed. They only ran the mill a few days, and only for a few hours at one time. They claim there was not sufficient water to make the test. This might, if the water was at an extreme low stage, have excused them from making it at that time, but not absolutely.

The appellants were not responsible for the low stage of water produced from natural causes; the contract was made in view of the existing water-power. It is not true, as the court held, "that

the respondents did not agree that the mill should be capable of grinding the specified quantity, with the water and head of water then owned by appellants, or that the effect of their agreement was that the mill with an adequate motive power should be capable of grinding that quantity of flour."

The respondents proposed to put into appellants' mill a new process for manufacturing flour in place of the old one then in use, to put in the requisite machinery, make the necessary connections of the inside works, connect the general apparatus with the power which the appellants were using, and guaranteed the result mentioned. They saw what power the appellants had, and their proposition should be deemed to have been made with reference to it. If they had intended to be understood that the mill, "with adequate motive power," would have the capacity and capability guaranteed, they ought to have so framed their proposition. Upon the contrary, they said in terms, "we are to make the necessary plans for the mill, and when the mill is constructed according to said plans, we guarantee," etc. What could the appellants under the circumstances have understood, otherwise than that the mill when completed was to be run by the same water-power which they had been using in operating the old mill, and have the efficiency promised that it should possess. Of course it was not understood that the mill, when the water was so low that the usual head could not be maintained, would make sixty barrels of flour in twenty-four consecutive hours; but they must have expected that with an ordinary stage of water, such as had been sufficient to operate the old mill, they would be enabled to produce that quantity within that time. Prudent business would not be likely to subscribe to a scheme involving an expenditure of thousands of dollars, with no assurance that it could be rendered practical without laying out an additional indefinite amount. Nor did the evidence show an acceptance of the mill on the part of the appellants. The new work and materials were so intermixed with the old work that they could not be separated without entirely destroying the utility of the mill.

The contract for its construction was entire and indivisible, and the making of the payment in question was by its terms

dependent upon its completion; nor did the appellants by using the mill waive any right to demand a performance of the condition upon which the payment was to be made. In *Smith* v. *Brady*, 17 N. Y., Judge Comstock, at pages 188, 189, in speaking of building contracts, said: "The owner of the soil is always in possession. The builder has a right to enter only for the specified purpose of performing his contract. Each material as it is placed in the work becomes annexed to the soil, and thereby the property of the owner. The builder would have no right to remove the brick, or stone, or lumber after annexation, even if the employer should unjustifiably refuse to allow him to proceed with the work. The owner from the nature and necessity of the case takes the benefit of part performance, and therefore by merely so doing does not necessarily waive anything contained in the contract. To impute to him a voluntary waiver of the conditions precedent from the mere use and occupation of the building erected, unattended by other circumstances, is unreasonable and illogical, because he is not in a situation to elect whether he will or will not accept the benefit of an imperfect performance. To be enabled to stand upon the contract he cannot reasonably be required to tear down and destroy the edifice if he prefers it to remain. As the erection is his by annexation to the soil, he may suffer it to stand, and there is no rule of law against his using it without prejudice to his rights."

If such is the rule, where a contractor engages to furnish material and construct a building on the land of another, then *a fortiori* is the rule under contracts of the character of the one in question. Here the respondents only furnished a part of the material for the mill, and combined it with the other material belonging to the appellants, and the entire structure attached to and became a part of the realty.

The right of the appellants to use the property without waiving the condition, it seems to me, is undeniable. Besides it could not be ascertained by any other mode than an actual use of the mill, whether the guarantee had been fulfilled or not. And again the appellants could not be required to permit their mill to remain idle and their business stop. It was their duty,

both to themselves and the respondents, to make the best possible use in their power of the mill; and in so doing they certainly ought not to be chargeable with having waived any condition of the contract, or of having accepted the mill under it. A considerable discussion was had at the hearing with reference to the measure of damages in this class of cases, but I do not regard the question as important in this case in view of the real issue herein. If the respondents failed to perform their contract in any material particular, they were not entitled to recover upon it, and the appellants had no claim to general damages in consequence of any such failure. They should not be allowed to refuse to make the last payment to respondents for constructing the mill, and at the same time be allowed general damages for its non-completion. If they repudiate their obligation under the contract, upon the ground that the respondents have failed to comply with its terms, they cannot claim such damages on account of the failure.

The principle is the same as that which governs in cases of the manufacture of particular articles ordered to be made in a certain manner, and when finished are found not to be in accordance with the order, and the party for whom they are manufactured refuses to receive them upon that ground. Such party would be entitled to recover back any money he had advanced upon the articles, and to recover any special damages he had suffered; but he has no claim to damages such as arise upon a breach of warranty in the sale and delivery of personal property. If the appellants had commenced an action to recover damages for not constructing the mill in accordance with the contract, and proved their cause of action, their measure of damages would have been the difference between the actual value of the mill as constructed, and what its value would have been had it been constructed as provided by the contract. (2 Sutherland on Damages, 429; *Edwards* v. *Collson*, 5 Lans. 324; *Ladd* v. *Lord*, 36 Vt. 194; *Giffert* v. *West*, 33 Wis. 617.) Or if the appellants in this case had set up said matter by way of counterclaim in the nature of recoupment, they would have been enabled to cut off from the respondents' claim the amount of the damages

measured by the rule suggested; but they have no right to plead the failure of respondents to comply with the contract and overthrow their claim, and also be allowed such damages.

I do not see that the question of damages, as bearing upon the alleged failure of the respondents to comply with their said guarantee, need be considered in the trial of the action. If the said guarantee has not been fulfilled, then, as has already been stated, the respondents have no right of action for the non-payment of the last installment named in the contract; and if it has been fulfilled, the appellants are not entitled to any damages on account thereof. Upon the question of substantial compliance with the contract, and of the appellants being entitled to the deduction to enable them to complete the work in exact accordance with it, the Circuit Court seems to have entertained the correct view, except that a distinction must be made between the furnishing of the material and doing the work in constructing the mill, and the guarantee as to the capacity and capability of the mill when completed. The former matter is comparatively unimportant.

A defect in the material or work can be easily remedied; but a lack of capacity or capability of the mill is a *vital* defect and is irremediable. The fault, however, must be tangible; if it were so slight that it would not affect the utility of the mill it should be disregarded. The rule as to the allowance of damages for the loss of earnings and profits in such a case is correctly stated in *Griffin* v. *Colver*, 16 N. Y. 489. That case furnishes all the necessary information requisite upon that subject.

The judgment must be reversed, principally upon the error alluded to in regard to the contract having been made with reference to the water-power the appellants were using to operate their mill when the proposition to enter into it was made. The case will be remanded for a new trial, in accordance with the principles of this opinion.