GIBLIN, Appellant, vs. NORTH WISCONSIN LUMBER COMPANY, Respondent.

*February 1—April 9, 1907.*

*County orders: Sale: Failure of consideration: Implied warranty: Action to declare void: Tender of defense: Privity between payee and his assignee: Judgment ` conclusive between defendants: Contracts against public policy.*

1. When county orders are adjudged void there is a total failure of consideration for a prior contract to purchase them.

2. In the sale of county orders there is an implied warranty that the seller has title and that they are not spurious, false, or counterfeit.

3. Where both the payee named in county orders and his assignee were defendants in a taxpayers' action to have the orders declared fraudulent and void, it was not necessary for the assignee to tender the defense of the action to the payee in order to make the judgment conclusive as between them.

4. In such case the payee named in the orders and his assignee were in privity in the action with respect to the invalidity of the orders.

5. Where the plaintiff makes a claim hostile to each and every defendant in the suit, asserting that an instrument for the payment of money in which each defendant has or claims an interest, either as present holder or as privy to the present holder by reason of being a transferrer of such holder, is fraudulent and void and obtains judgment to that effect, the instrument must be held fraudulent and void in any subsequent litigation between the same parties, however they may be arrayed therein against one another.

6. A judgment in a taxpayers' action canceling and declaring void certain county orders is *quasi in rem* and establishes *prima facie*, as against all persons, the status of such orders.

7. A contract whereby the manager of a corporation, who was also chairman of the county board, knowing that an action to have certain county orders declared void was threatened, agreed on behalf of the corporation to purchase and pay for said orders and take chances on the litigation, was *contra bonos mores* and void.

APPEAL from a judgment of the circuit court for Sawyer county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

The appellant brought this action at law upon contract for the sale of county orders of Sawyer county aggregating $2,500, and at the close of the testimony the trial judge directed a verdict in favor of the defendant, and from the judgment 'thereon dismissing the complaint the plaintiff appeals.

The county orders and the contract sued on came into existence as follows: The plaintiff was sheriff of Sawyer county in the years 1901 and 1902, and in August of the latter year made and presented to the county board of supervisors of that county a claim for "compensation and expenses incurred in pursuit of Albert Thompson, $975; A. G. Lewis, $890; J. H. Wagner, $875; Peter Wirleck, $725; Peter Olson, $350; traveled to arrest Charles S. Johnson, 4,000 miles, $400; subpœnaing witnesses in Johnson case, $150; traveled to subpœna six witnesses in Johnson case, 1,000 miles, $100; conveying John Helms, charged with selling liquor without license, $500;" some smaller items more definitely described— the whole aggregating $5,036.60. No dates of performing the alleged services were given, and the claim was not itemized further than shown. In his testimony in this action plaintiff admitted facts showing that the claim for the most part was false and fraudulent. This claim was certified by the then district attorney and verified by the plaintiff. The county board of supervisors of Sawyer county consisted of three members, among them a Mr. Peck, chairman of the board, who was strongly opposed to the allowance of the claim. On November 6, 1902, Mr. Peck resigned and Mr. Robert L. McCormick was elected in his place and held until the next spring election, when he was defeated for election. McCormick, at the time he held the office of supervisor and prior to that time, was an officer and general manager of the defendant corporation. The other two members of the county board were James Erickson, a farmer, and Oscar Holstrom, a saloonkeeper.

After McCormick became a member of the county board,

and on or about December 20, 1902, the plaintiff and his attorney had a conversation with McCormick concerning the allowance of this claim at $2,500, and it was substantially agreed outside of the session of the board and between McCormick and the plaintiff that the board would allow the bill at $2,500, and that McCormick would take the county orders to be issued thereon and use them in the payment of taxes. The plaintiff suggested that if the claim were allowed at $2,500 he would not get that much money because the county orders were at a discount, and that if the bill were allowed somebody might stop it, and McCormick thereupon informed the plaintiff that he would take the orders at their face because he had taxes to pay, and that he did not think anybody would stop the issue of the orders, because $2,500 was a reasonable sum, and if they did he (McCormick) would take care of it and take his chances. The claim was again presented to the county board and allowed at $2,500 on or about January 5, 1903, McCormick not voting. The county orders in question were issued in payment of said claim and delivered to an employee of the defendant corporation, and some days thereafter the plaintiff called at the office of the defendant and indorsed the county orders by signing his name on the back, leaving them in the possession of the defendant. The defendant corporation delivered the county orders to the town treasurer, one Skogstad, in payment of part of its taxes then payable to the town treasurer. The plaintiff and McCormick were expecting that some of "their enemies" might bring in injunctions against the payment of these county orders or the allowance of this claim and recognized that haste was necessary or at least desirable.

While matters were in this condition A. M. Carpenter and the Chippewa Farm Land Company on or about February 25, 1903, began a taxpayers' suit against Sawyer county, its treasurer, the said three members of its county board, the plaintiff, the defendant, and others for the purpose of enjoin-

ing the payment of said county orders or the receipt of the same for taxes, or the recognition of the same in any manner as evidence of indebtedness of Sawyer county. This suit was also directed against other county orders besides those involved in this action. Skogstad, who was a defendant and who had received the county orders in question in payment of defendant's taxes, served an answer and cross-bill asking for affirmative relief against the defendant corporation, to the effect that such corporation be required to pay him in money the taxes which they had attempted to discharge by delivery of said county orders. The plaintiff appeared and answered in the taxpayers' suit and the defendant corporation and the three supervisors defaulted therein. That suit was prosecuted to judgment, whereby "it was ordered, adjudged, and decreed that the following orders issued by the county clerk of Sawyer county on the county treasurer of said county are, and each of them is, wholly illegal and void . . . to wit: . . . county orders issued . . . in favor of the defendant, *William Giblin,* and numbered 12,085 to 12,091, inclusive." There was also a perpetual injunction decreed against paying said orders or any of them, or receiving the same for taxes, or in any manner recognizing the same as evidencing valid indebtedness of said Sawyer county. On the cross-bill of Skogstad the defendant corporation was required to repay to the county the amount of taxes attempted to be paid by the defendant by means of the illegal county orders in question, with interest from January 5, 1903, and it did so.

For the appellant there was a brief by *Frank B. Lamoreux* and *H. B. Walmsley,* and oral argument by *Mr. Walmsley.* They contended, *inter alia,* that as the county orders were mere choses in action there was no implied warranty except that of genuineness. 15 Am. & Eng. Ency. of Law (2d ed.) 1220, 1240; *White v. Robinson,* 50 Mich. 73, 14 N. W. 704; *Otis v. Cullum,* 92 U. S. 447; *Meyer v. Richards,* 163 U. S. 385, 413; *Lawton v. Howe,* 14 Wis. 241, 250; *Hurd v. Hall,*

12 Wis. 112, 137; *Getty v. Rountree,* 2 Pin. 379, 386; *Littauer v. Goldman,* 72 N. Y. 506, 517; *Hall v. Conder,* 26 L. J. C. P. 138. Plaintiff is not concluded by the judgment in the taxpayers' action because no issue was there presented between him and the defendant in this action. 24 Am. & Eng. Ency. of Law (2d ed.) 731–733; sec. 2656a, Stats. (1898); *Pioneer S. & L. Co. v. Bartsch,* 51 Minn. 474, 38 Am. St. Rep. 511; *Jones v. Vert,* 121 Ind. 140, 16 Am. St. Rep. 379; *Ostrander v. Hart,* 130 N. Y. 406; *Finley v. Cathcart,* 149 Ind. 470, 63 Am. St. Rep. 292, 297, 298; *Saveland v. Green,* 36 Wis. 612, 624.

For the respondent there was a brief by *Wickham & Farr* and *F. L. McNamara,* and oral argument by *Mr. McNamara* and *Mr. James Wickham.*

TIMLIN, J. If we assume as most favorable to the appellant that there was evidence tending to show that the defendant, through McCormick, purchased these county orders from the plaintiff and agreed to pay $2,500 therefor, there still remain many insuperable legal obstacles to the plaintiff's recovery. One is that, the county orders so sold having been adjudged in the taxpayers' suit fraudulent and void, there was a total failure of consideration. 1 Parsons, Cont. (9th ed.) 462, 463, and cases; *Rowe v. Blanchard,* 18 Wis. 441. Another is that in the sale of such nonnegotiable choses in action there is an implied warranty that the seller has title and that the chose is not spurious, false, or counterfeit. *Giffert v. West,* 33 Wis. 617; *Scott v. Hix,* 2 Sneed, 192, 62 Am. Dec. 458, 468, and cases in note; *Roehl v. Volckmann,* 103 Wis. 484, 79 N. W. 755. The decree in the taxpayers' suit having been offered in evidence, it was competent evidence not only against the parties actually named in said suit, but also against all the taxpayers and citizens in said county. *State ex rel. Wilson v. Rainey,* 74 Mo. 229; *Clark v. Wolf,* 29 Iowa, 197; *Sauls v. Freeman,* 24 Fla. 209, 4 South. 525;

*Bear v. Board of Co. Comm'rs,* 122 N. C. 434, 29 S. E. 719 ; *Scotland Co. v. Hill,* 112 U. S. 183, 5 Sup. Ct. 93. Both the plaintiff and defendant in this cause were parties to that tax-payers' suit brought by Carpenter and another to enjoin payment of the county orders in question.

The appellant seeks to avoid the effect of the foregoing by two propositions: First, he contends that in an action brought by a plaintiff against several defendants the judgment or decree therein is not conclusive upon two or more of said defendants in a subsequent controversy between themselves over the same subject matter; second, that where a judgment or decree is not conclusive it is not evidence at all,—citing to the first proposition 24 Am. & Eng. Ency. of Law (2d ed.) 731, 733, and cases there referred to; and citing to the second proposition *Pioneer S. & L. Co. v. Bartsch,* 51 Minn. 474, 53 N. W. 764, which declares that the rule is familiar that, "as against any one except the parties and their privies, a judgment is evidence only of the fact of its recovery." We are reminded that the lumber company, defendant, did not tender the defense of the taxpayers' action to the plaintiff, and it is asserted that there was no privity between the defendants in that action, the *North Wisconsin Lumber Company* and *William Giblin.* Upon these last two propositions we are convinced that no tender of the defense of the taxpayers' suit to *Giblin* was necessary; he was himself a defendant therein and controlled his own defense, and had every opportunity to prove the county orders in question valid if he was able so to do, and that in such case the requirement of tendering the defense of an action to one liable over to a defendant has no application. *Giblin* was also in privity with the *North Wisconsin Lumber Company.* He was its vendor. The very action that he has now before the court assumes and is based upon privity by contract. But the rule that an adjudication in favor of a plaintiff against two or more defendants is not binding upon such defendants is rather an exception to the rule that all parties to a decree are concluded thereby, than a rule itself.

This exception relates to matters between codefendants which are not in themselves necessarily involved in the plaintiff's contention against each and all the defendants, or matters which are not the main object and purpose of the plaintiff's suit. But where the plaintiff makes a claim hostile to each and every defendant in the suit, asserting that an instrument for the payment of money in which each of the defendants claims an interest or has an interest, either as present holder or as privy to the present holder by reason of being a transferrer of the present holder, is fraudulent and void, and obtains a decree affirming his claim against such instrument, that instrument must be held fraudulent and void in any subsequent litigation between the same parties however they are arrayed against one another in such subsequent litigation. In *Louis v. Brown Tp.* 109 U. S. 162, 3 Sup. Ct. 92, the plaintiff brought an action at law against Brown township on bonds and interest coupons of the defendant township and the defendant filed two pleas of former adjudication. By the first of these pleas it was averred that in an action brought by one Hiram Hipple, the owner of real estate incumbered by mortgage given to secure the payment of these bonds, which action was against the trustees of Brown township, Richard B. Hopple and others, and in which Richard B. Hopple filed a cross-bill alleging the bonds and mortgage to be valid and praying that said bonds and mortgage might be declared to be valid and for a decree of foreclosure, it was adjudged that these bonds were void for want of authority in the trustees of Brown township to issue the bonds. It was also averred that the plaintiff claimed under Richard B. Hopple. With reference to the first plea the court said:

"But if there had been no cross-bill, the fact that both Hopple and the trustees were placed as defendants in the suit of Hipple does not impair the conclusive character of the decree in that case as between those parties. The present case is precisely analogous to that of *Corcoran v. Chesapeake & Ohio C. Co.* 94 U. S. 741."

It would be a rather extraordinary condition if county or-·ders, municipal bonds overdue, or other nonnegotiable choses in action which have been by proper decree of a court of ·equity declared fraudulent and void could be dealt in and bought and sold thereafter, and in every case the purchaser ·would have to prove over again the fraudulent character or invalidity of such choses in action, and could not use the de-·cree declaring the paper invalid and fraudulent to establish *prima facie* such claim.   This would make judicial investiga-tion of that proposition interminable, facilitate fraud, and result in many cases that the things in action would be held void in one lawsuit and valid in another, according as evi-dence was available or unavailable or the fortunes of litiga-tion fluctuated.   It may be answered, all this could be obvi-·ated by requiring the instruments to be surrendered up and ·canceled by the original decree.   But the complainant in that case is usually satisfied if he obtains an adjudication which protects him or the corporation for which he sues and is not apt to be concerned in the protection of the general public. Where the instruments are negotiable the complainant will usually have this inserted in his decree.   Where they are non-negotiable he is apt to be indifferent.   In Simonton, Mun. Bonds, § 119*a,* it is said that the doctrine of *lis péndens* has no application to negotiable paper, and the holder of negotia-ble bonds is not therefore affected by any litigation to which he is not a party, and a decree or judgment in such suit will not bind him; but if he purchase such paper after maturity and after it has been adjudged void, he is bound by the judg-ment.   He also refers to *Stewart v. Lansing,* 104 U. S. 505, which is worth considering in this respect.   Coupon bonds of the town of Lansing in New York were by commissioners ex-·ecuted to a railroad company pursuant to an order of the ·county judge acting under authority of a statute.   Certain taxpayers of the town procured a writ of *certiorari* to be issued from the supreme court to the county judge for a re-

view of this determination, and the supreme court reversed, and in all things held for naught, the judgment of the county judge appointing commissioners and authorizing the issue of the bonds. Pending this proceeding, however, the commissioners issued the bonds to the railroad company, and it disposed of them to various persons, among others to Stewart, the plaintiff. The supreme court said:

"As between the railroad company and the town, the judgment of the supreme court reversing and annulling the order of the county judge invalidated the bonds. The judgment of reversal was equivalent between these parties to a refusal by the county judge to make the original order. The next inquiry is whether, on the evidence, Stewart occupied in this suit a better position than the town. That depends on whether the testimony was such as to make it the duty of the court to submit to the jury, under proper instructions, the determination of the question whether he was in a commercial sense the *bona fide* holder of the coupons sued for. . . . Here the actual illegality of the paper was established. It was incumbent, therefore, on the plaintiff to show that he occupied the position of a *bona fide* holder before he could recover."

After holding that there was sufficient evidence tending to show that Stewart was not a *bona fide* holder, it was ruled that it was not error to direct a verdict in favor of the town. In this case the invalidity of the bonds as against Stewart was proven by the judgment of the supreme court to which Stewart was not a party, it having been ascertained that he was not in a commercial sense the *bona fide* holder of the coupons sued on. There is some conflict and uncertainty with reference to the admissibility of judgments in evidence against persons not parties to the judgment or privy to such parties. And the rule is by no means settled, and by no means without exception, that a judgment is not evidence in any case in which it is not conclusive evidence. It is said that

"a record may be used to establish the fact of such judgment and the legal effect thereof, and cannot be collaterally attacked, even by strangers. The rule is stated by Sir James

Stephen as follows: 'All judgments whatever are conclusive proof as against all persons of the existence of that state of things which they actually effect when the existence of the state of things so effected is a fact in issue or is or is deemed to be relevant to the issue.' So, verdicts and judgments on questions of a public nature, where evidence of a general reputation would be received, have been admitted, although the parties were not the same nor in privity, but not as conclusive evidence; and, as will hereafter be shown, judgments in actions *in rem*, in so far at least as they fix the status of the particular subject matter, may not only be admissible, but may also be conclusive in a proper case, even against strangers to the record." 2 Elliott, Ev. § 1525, and cases; *State ex rel. Atkinson v. McDonald*, 108 Wis. 8, 84 N. W. 171.

Certain decrees in equity are classified as *quasi in rem*, and such decrees may be offered in evidence as against any person with respect to the particular property described therein for the purpose of establishing *prima facie* the status of that property. *Arndt v. Griggs*, 134 U. S. 316, 10 Sup. Ct. 557; *Fry v. Taylor*, 1 Head, 594; *Liginger v. Field*, 78 Wis. 367, 47 N. W. 613. A decree declaring invalid, fraudulent, or spurious municipal obligations which are nonnegotiable but readily assignable is of this latter class. Consequently the decree in the taxpayers' suit mentioned canceling and perpetually enjoining payment of the county orders in question was binding upon the plaintiff and defendant in this action as determining that said county orders were invalid and worthless, first, because they were both parties to the taxpayers' suit and the matter of the invalidity and illegality of these county orders was a direct issue in that action between the plaintiff and each defendant therein; second, because they were residents and inhabitants of the county for and in whose behalf the taxpayers' action was carried on; third, because the plaintiff and defendant were in privity in said action with respect to the invalidity of said county orders; and fourth, because the decree in such case is *quasi in rem* and establishes *prima facie* as against all persons the

status of the chose in action canceled up and declared fraudulent and invalid.

The appellant next contends that there was an agreement on the part of the defendant, through McCormick, to take these county orders for better or worse; that is to say, to take them and pay $2,500 therefor, and take its chances on the taxpayers' action which was expected or threatened. We do not think there is any sufficient evidence to establish *prima facie* such an agreement on the part of the defendant, but if we assume that there was sufficient evidence for that purpose, then we would have a case where the chairman of the county board of supervisors and general manager of the defendant corporation, having notice that the taxpayers' suit to cancel up the county orders in question or to enjoin the collection by the plaintiff, *Giblin,* of his claim filed with the county board for allowance was threatened, agreed to purchase said claim and pay $2,500 therefor and take his chances on the litigation, which means that he would place himself in an attitude of hostility to the suit brought in behalf of the county by its taxpayers and defeat such suit if possible. Such an agreement, if made by the corporation through the county chairman acting for it, would be *contra bonos mores* and void. In whatever way we look at this case the judgment of the circuit court must be affirmed.

*By the Court.*—The judgment of the circuit court is affirmed.